CAL DIVE INTERNATIONAL, INC.
and Cal Dive International
N.V., Plaintiffs,

v.

M/V TZIMIN (EX STENA SEAHORSE),
Her Engines, Tackle, Appurtenances,
Etc., in rem, et al., Defendants.

No. 85–1382–B–C.

United States District Court,
S.D. Alabama, S.D.

Aug. 18, 1989.

Alex F. Lankford, III, A. Clay Rankin, Hand, Arendall, Bedsole, Greaves and Johnson, Mobile, Ala., for plaintiffs.

Rae M. Crowe, and Ray Morgan Thompson, Armbrech, Jackson, Demorie and Crowe, Mobile, Ala., James H. Roussel, Co-Counsel, Phelps, Dunbar, Marks, Cleverie and Sims, New

Orleans, La., for intervenors and defendants.

JOHN R. BROWN, Circuit Judge.[*]

On the very eve of the commencement of a month's long trial before this visiting judge, the magistrate entered a sanctions order against the intervening plaintiffs Stena AB and Rederi AB Concordia (collectively referred to as Stena). Stena timely appealed that decision.

Subjected to extreme abbreviation, this maritime suit by Cal Dive[1] sought under the laws of Mexico, the United States of America, or both, a maritime lien against the M/V STENA SEAHORSE, *in rem* and *in personam* with intervention by Stena to enforce mortgages on the M/V STENA SEAHORSE. The asserted maritime lien was primarily for advances made to or through Oceanica.

The magistrate's order of July 7, 1988 under review imposed these sanctions:

a. Stena was precluded from introducing at trial certain evidence concerning financial, profitability history and the book value of the STENA SEAHORSE, maintenance manuals for the years 1984 through 1986, and the contents of the soft daily deck log for the vessel or the official daily deck logs kept from February 22, 1985 through March 20, 1986;

b. The magistrate released to Cal Dive and its counsel two memoranda booklets prepared in February and August of 1987 at the request of counsel for Stena by Captain Hansson and further ordered that certain documentary evidence contained in the booklets should be excluded from trial; and

c. Cal Dive was awarded $28,002.10 in attorneys' fees as additional sanctions.

## In the Beginning

On the commencement of the trial Monday, July 11, 1988 this judge made several interim rulings and pronouncements. First, the court stated that it was aware of the magistrate's order and that although,

at that time, no appeal had yet been taken and the matter was not before this judge, nevertheless the court would not apply the sanctions (a) and (b) the effect of which would be to exclude evidence. Rather, the court ruled that in view of the fact that the judge was serving voluntarily under designation, it was the purpose of the court to receive any and all evidence which either one or all of the parties offered and that no particular type of evidence would be excluded in advance. The reasoning behind this pronouncement was that the judge, voluntarily serving in addition to his regular duties as a Circuit Judge on the Fifth Circuit and elsewhere, did not wish to risk the prospect or possibility that on appeal the Eleventh Circuit would hold such excluded evidence properly admissible thereby requiring a further new retrial on remand.

In due course the order was timely appealed and under the rules of the Southern District of Alabama, the appeal was assigned to this judge.

## The Trial of the Merits

Upon completion of all the evidence and arguments of counsel the court proceeded to announce from the bench its findings of fact and conclusions of law. Again with compressed abbreviation, the court determined that Cal Dive did not have a maritime lien under either Mexican or United States law. Little, if any, material comprising the matter excluded under paragraph (a) or (b) was either offered or received. In any event the court now reiterates its findings that none of such material had any significant bearing on or influenced in any way the findings and conclusions announced at the conclusion of the trial by the court. The court additionally finds as a fact and conclusion of law that all of the evidence excluded under paragraphs (a) and (b) was essentially irrelevant and immaterial to the real issues in the case, and its exclusion or admission would not have altered or modified in the least any findings of fact or conclusions of law

\* The Honorable John R. Brown, Senior Circuit Judge, Fifth Circuit, sitting by designation.

1. Cal Dive International, Inc. and Cal Dive International N.V.

heretofore announced and reiterated by the court.

■ One factor bearing heavily on the court's determination not to carry out the magistrate's paragraph (a) and (b) exclusion is the constitutional limits on sanctions stemming from the Due Process Clause of the Fifth and Fourteenth Amendments on the imposition of sanctions. *See* 8 Wright & Miller, *Federal Practice and Procedure* § 2283 (1970) (construing F.R.Civ.P. 37). Constitutional limits apply. If application of discovery sanctions is shown to be arbitrary and in violation of due process rights, the judgment is void. *Brown v. McCormick*, 608 F.2d 410, 414 (10th Cir.1979). *See United States v. Sumitomo Marine & Fire Insurance Co., Ltd.*, 617 F.2d 1365, 1369 (9th Cir.1980). Though application of F.R.Civ.P. 37 is within the discretion of the trial court, the court must be mindful of the demands of the due process clause in proceedings under this rule. *Dunbar v. United States*, 502 F.2d 506, 508–09 (5th Cir.1974).

■ The exclusion of available evidence is a severe remedy raising substantial constitutional questions of due process. The outright denial of a right to introduce evidence is a sanction which should be imposed with the greatest circumspection, suggesting as always the desirability of limiting the sanction to the least destructive forms.

■ No paragraph (a) or (b) evidence was excluded. Whatever the magistrate might reasonably have anticipated in advance of the trial, the trial itself and the handling of the problem by this trial judge made the problem of paragraph (a) and (b) completely irrelevant if not altogether moot. No harm or prejudice has been sustained by either party because of these rulings.

To whatever extent the matter of paragraph (a) or (b) has any vitality, each is vacated and set aside thus leaving for review the monetary attorneys' fee sanction of $28,002.10.

### The Standard of Review

Most of the legal literature pertains to the standard of review by a court of appeals reviewing the action of the district court in sanctions matters. There both the Fifth Circuit and the Eleventh Circuit are together in specifying abuse of discretion. *See Merritt v. International Bhd. of Boilermakers*[2], 649 F.2d 1013, 1016 n. 6 (5th Cir.1981); *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 872 (5th Cir. 1988) (en banc); *Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir.1988); *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1519 (11th Cir.1986); *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1447 (11th Cir.1985).

Although similar, there is good reason why a district court in reviewing the sanction order of a magistrate ought not to be so closely cirumscribed as would be a court of appeals. With the vast discretion committed to the trial court, that court should have the widest sort of review, whether clearly erroneous, simply wrong, abuse of discretion or "other circumstances [which] make [a sanction award] unjust." F.R. Civ.P. 37(a)(4). Determination of the precise standard is not essential since using the most generous, or the most severe, standard Stena has failed to demonstrate that the award of attorneys' fees should be overturned.

### Sanctions/Attorneys' Fees

Stena's appeal from the award of $28,-002.10 for attorneys' fees and expenses is very much alive. For reasons we point out, we hold that Stena has not shown that the magistrate's order was an abuse of discretion or otherwise unacceptable and it is therefore affirmed.

---

**2.** Binding on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (declaring decisions of the Fifth

Circuit Court of Appeals as of Sept. 30, 1981 are binding as precedent in the Eleventh Circuit).

Although the magistrate from time to time uses strong language that on its face might impugn the good faith and ethical conduct of Stena's counsel, this judge—for the court and for the magistrate—rejects any such implication. Of great influence has been the actual observation of the three and one-half week trial in which all counsel in the highest and best traditions of the bar conducted themselves as spirited, relentless, persistent advocates but always within the bounds of courtesy, consideration, and patience worthy of experienced counsel, faithful to the hoary images and recollections of the ancient but never forgotten title of Proctor in Admiralty.

The actual trial record demonstrates as well that seldom, if ever, has there ever been a more thoroughly tried case reflecting ardent, imaginative discovery producing hundreds of well organized documentary exhibits. The stated goal of this judge was to receive every stitch of evidence which either party offered or proffered. Without reservation or objection of any kind the announcements "the plaintiff rests" and "the plaintiff/intervenor rests" affirmed the fact that each had had the opportunity to present all of the evidence desired. Although Cal Dive's counsel were unnecessarily put to the inconvenience and the necessity for extensive procedural efforts of filing and persisting in the many motions to compel, no prejudice to the merits of its claims was sustained by Cal Dive.

### The Few Proves All

■ With over 30,000 pages of documents ultimately produced by Stena which included 2,134 pages formally produced on October 8, 1986 in response to Cal Dive's initial request for production plus approximately 20,000 pages of documents on October 8, 1986, April 20, May 12, May 21, September 14, September 18, October 16, November 16, 1987 and February 29, 1988, it is evident that after the magistrate's careful consideration of the myriad

details nothing would be served by this opinion undertaking to discuss them in minute detail item by item, objection by objection, ruling by ruling. It suffices to refer to a few illustrations which demonstrate and support the magistrate's conclusion that Stena's dilatoriousness justified the necessity for Cal Dive's filing and persistent prosecution of the motions to compel.

The most spectacular incident relates to the action or nonaction of Captain Goran Hansson who, without supervision, and more important, assistance of counsel was largely responsible for both analyzing Cal Dive's request for production, investigating the existence and availability of documents in Stena's records, and assembling the documents for submission through counsel. Indeed, the magistrate found:[3]

> The duty of production fell to Captain Goran Hansson whose testimony at the sanction hearing was a revelation of how the production of documents proceeded. He was simply given a list of Cal Dive's requests and set about to copy and produce those documents *he deemed* responsive to the requests. It was a *"learning experience"* for him and each time the Court would order more documents produced, his job became a little clearer. He gave no indication that he was aided in his task by any of the lawyers working for Stena/Concordia. In fact, he was surprised that certain documents (Cal Dive's hearing Exhs. 29–30, 31 & 32, for example) were not produced early in 1987 because he remembered that they were turned over to local counsel at that time. He made no personal inspection of the "Aberdeen documents"....

This means, as Cal Dive urges, that even though critical documents were in the possession of counsel as early as 1987 Stena's counsel took the position as late as September 1987 that "they do not have any such documents in their possession."[4] Captain Hansson could not explain why Stena's counsel elected not to produce such doc-

---

3. Sanctions order of July 7, 1988 at 29 (emphasis in original)

4. Stena Response to Cal Dive's Request for Production (Sept. 14, 1987), Item No. 13, at 6.

uments until March 1988 and then only because of the court's order to produce.

Worse, Cal Dive's much vaunted "58 item list" filed in August 1987, itemizing the categories of documents Cal Dive sought but Stena had not produced, had not even been furnished to Captain Hansson by counsel until February 1988, again after a Court order to produce. Consequently, Captain Hansson did not begin his efforts to assemble the 58 items until February 1988.

Another illustration is the "Aberdeen documents". As the magistrate found in his earlier order of January 20, 1988: [5]

> Stena intervened in this lawsuit on April 10, 1986 and on April 15, 1986, moved its offshore division from the headquarters in Gothanberg, Sweden to Aberdeen, Scotland.... [T]he total number of documents [moved to Aberdeen] were estimated to fill "20 containers" in the Aberdeen warehouse. Although the depositions of ... [Stena employees] conclusively show that there were records concerning the operation of the Stena SEAHORSE transferred to the Aberdeen warehouse, Stena made no effort to review those documents ... until after the August 17, 1987 motion to compel was filed.
>
> ... [Although the documents were subsequently produced after Stena's good faith efforts,] Stena is responsible to Cal Dive for the reasonable expenses incurred for being required to gain production of the Aberdeen documents through a motion to compel.

Cal Dive, unchallenged by Stena, asserts that at the sanctions hearing (June 27–28, 1988) Captain Hansson acknowledged that during the taking of the depositions in Sweden he became aware of documents stored in Aberdeen which were not produced. This reasonably led the magistrate to con-

clude that the Aberdeen documents were not produced in time for the May Swedish depositions, inasmuch as Captain Hansson testified that the first time he made a "determined search" for the documents was subsequent thereto in the summer of 1987.

There having been numerous motions by Cal Dive to compel production which history demonstrates were reasonably required, it is on the findings and conclusions of the magistrate which this court approves, a classic case for the award of attorneys' fees under F.R.Civ.P. 37(a)(4).[6] "A reading of the Rule leads to the inescapable conclusion that the award of expenses is mandatory against a party whose conduct necessitated a motion to compel discovery ..., 'unless the court finds that the opposition to the motion was substantially justified....'" *Merritt,* 649 F.2d at 1019 (citing F.R.Civ.P. 37(a)(4)).

"The great operative principle of Rule 37(a)(4) is that the loser pays, unless the loser can demonstrate that its position, while unsuccessful, was 'substantially justified'...." *Hansen v. Shearson American Express,* 97 F.R.D. 465 (E.D.Pa.1983) (citations omitted). Determining whether the respondent's defense is "substantially justified" requires that the court's focus "... must be on the quality of the justification and the genuineness of the dispute; where an impartial observer would agree that a party had good reason to withhold discovery then such a justification is 'substantial.'" *Alvarez v. Wallace,* 107 F.R.D. 658, 662 (W.D.Tex.1985).

■ Prejudice to the merits of the party's cause is not required. *Marquis v. Chrysler Corp.,* 577 F.2d 624, 642 (9th Cir.1978); *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 729 F.2d 469, 473–74 (7th Cir. 1984). Although prejudice may become a significant factor especially in determining

---

**5.** Magistrate's opinion and order at 11–13 (reproduced in Cal Dive app. Item 0).

**6.** The Rule provides in pertinent part, "(4) *Award of Expenses of Motion.* If the motion [to compel] is granted, the court shall ... require the party ... whose conduct necessitated the

motion ... to pay ... the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified...." *See* 4A *Moore's Federal Practice,* ¶ 37.02 [10.–1], at 37–51 (2d ed. 1988).

the amount or kind of sanctions, prejudice as such is not required. *Marshall v. Segona,* 621 F.2d 763, 769 (5th Cir.1980).

■ There is no challenge to the magistrate's determination that Cal Dive's counsel expended 379.25 hours in pursuing the motions to compel, including the sanction hearing of June 1988. Nor is there any challenge to his fixing the lodestar rate.[7] Although by picking and choosing one might find fault with the inclusion/exclusion of some of the items, the magistrate had an acceptable basis for his conclusion that out of 81 items presented, Cal Dive was successful in 57 which he then translated into a 70% rate of success. Consequently the apportionment of reasonable expenses by the magistrate on a 70%/30% basis was factually acceptable and legally permissible. 4A *Moore's Federal Practice* ¶ 37.02 [10.–3] at 37–57 (2d ed. 1988).

### Winding it All Up

The result is that with respect to the magistrate's order of July 7, 1988 this court holds:

(i) as to paragraphs (a) and (b) the order was never carried into effect and is therefore immaterial and irrelevant, and therefore, if not moot, is vacated and reversed;

(ii) the award of $28,002.10 as attorneys' fees is affirmed.

Judgment, accordingly is therefore entered this 16th of August, 1989.

---

7. *See Norman v. Housing Authority of Montgomery,* 836 F.2d 1292 (11th Cir.1988).