Marlyn BROWN, Plaintiff,

Alan Ken Andre, Intervenor,

v.

STATE OF IOWA, et al., Defendants.

No. 4–92–CV–10497.

United States District Court,
S.D. Iowa, C.D.

Dec. 3, 1993.

University of Iowa College of Law Clinical Program, for plaintiff and intervenor.

Assistant Iowa Atty. Gen., for defendants.

## TABLE OF CONTENTS

I. INTRODUCTION AND FACTUAL BACKGROUND   169
   A. Overview of the Underlying Litigation   169
   B. Brown's and Andre's Counsel   170
   C. Brown's and Andre's Efforts to Obtain Initial Discovery from the Defendants   170
   D. The Motion to Compel   171
   E. Brown's and Andre's Counsel's Request for Attorney Fees   172.
II. ANALYSIS   173
   A. Federal Rule of Civil Procedure 37(a)(4) and Substantial Justification   173
   B. Rule 37(a)(4)—Reasonable Expenses and Attorney Fees   174
III. THE DEFENDANTS' FAILURE TO COMPLY WITH THIS COURT'S JULY 26, 1993 ORDER GRANTING MOTION TO COMPEL PRODUCTION   178
IV. CONCLUSION   179

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF AND INTERVENOR'S REQUEST FOR EXPENSES AND REASONABLE ATTORNEY FEES PURSUANT TO FED.R.CIV.P. 37(a)(4) AND ORDER IMPOSING RULE 37(b)(2) SANCTIONS AGAINST DEFENDANTS' COUNSEL**

BENNETT, United States Magistrate Judge.

This is an exquisitely simple garden-variety discovery dispute. Unfortunately, it raises disquieting concerns regarding excessive cost and delay in federal civil litigation. The most troubling aspect of the cost concern is the excessive attorney fees sought by law student "legal interns"—who are not yet full fledged members of the legal profession. The excessive attorney fees were requested by the legal interns following a successful motion to compel pursuant to Federal Rule of Civil Procedure 37(a). The court must now wrestle with the thorny issue of whether an unreasonable request for an award of expenses and attorney fees pursuant to Rule 37(a)(4) justifies a total denial of the requested expenses and fees.

There are equally troublesome concerns regarding excessive delay by the Defendants and the Iowa Assistant Attorney General who represents them. The Defendants and their counsel have demonstrated a pattern of repeated delay and indifference to Brown's and Andre's discovery requests. This conduct ultimately resulted in Defendants' counsel's failure to comply with this court's July 26, 1993 order to compel, requiring the Defendants to produce documents and answer interrogatories by August 5, 1993. The court must now determine whether the Defendants and their counsel's conduct requires the imposition of sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2).

## I. INTRODUCTION AND FACTUAL BACKGROUND.

### A. Overview of the Underlying Litigation

On August 4, 1992, Plaintiff Marlyn Brown, a legally blind inmate at the Mount

Pleasant correctional facility, Mount Pleasant, Iowa, commenced this action against the Defendants asserting violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Eighth Amendment to the United States Constitution and the Iowa Civil Rights Act, Iowa Code chapter 216 (formerly chapter 601A) (1993). Brown alleges that as a result of his blindness, he has limited access to various facilities, services, activities and accommodations at the Mount Pleasant correctional facility. This includes, *inter alia*, limitations on Brown's participation in employment opportunities which he claims would earn him a reduction in his sentence which is available to other sighted inmates. Most importantly, ·Brown asserts that he has been denied effective participation in the sex offenders' treatment program. Brown alleges that "successful completion of the Program is a condition of release or parole for Plaintiff." Pl. Complaint, p. 4, ¶ 17. Brown alleges that the sex offenders' treatment program "involves a substantial amount of reading and writing. Very little, if any, of the material plaintiff is required to read as part of the Program is on audio cassette and none of the reading material is in braille. Because of his disability, Brown has been unable to complete a substantial part of the Program." Pl. Complaint, p. 5, ¶ 18.

On April 18, 1993, this court granted Alan Ken Andre's motion to intervene. Mr. Andre is a hearing-impaired inmate at the Mount Pleasant correctional facility. Andre's allegations are very similar to those of Brown. He alleges he cannot complete the sex offenders' treatment program without an American Sign Language interpreter. Andre also alleges that "the successful completion of the Program is a condition of release or parole for Mr. Andre." Complaint in Intervention, p. 4, ¶ 13.

1. The law professors/practicing lawyers are seasoned federal litigators whose skill, experience and reputation are acknowledged by the court.

2. Pursuant to Iowa Court Rule 120 "a law student enrolled in a reputable law school . . . " who is "certified to the supreme court of Iowa by the dean of the school to have completed satisfactorily not less than the equivalent of three semesters

### B. Brown's and Andre's Counsel

Brown and Andre have been represented in this litigation by a legal entourage from the University of Iowa College of Law Clinical Program (collectively "Brown's and Andre's counsel"). This includes two law professors/practicing lawyers employed by the University of Iowa College of Law in the clinical law program;[1] a private practitioner from a Waverly, Iowa law firm; and, by the court's count, at least five legal interns.[2]

### C. Brown's and Andre's Efforts to Obtain Initial Discovery From the Defendants

On October 30, 1992, Brown's counsel served Defendants with a request for production of documents pursuant to Federal Rule of Civil Procedure 34. In correspondence dated January 12, 1993, the Assistant Attorney General, counsel for Defendants, informed Brown's counsel that she had requested from her clients the documents subject to the request for production and estimated that a formal response from her office would be forthcoming "within the next couple of weeks."

On February 2, 1993, Brown's counsel served interrogatories on Defendants pursuant to Federal Rule of Civil Procedure 33. Following the expiration of the thirty day time period for responses to the interrogatories under Federal Rule of Civil Procedure 33(a), Brown's counsel, by letter dated March 30, 1993, requested a formal response from the Defendants by no later than April 9, 1993. The March 30, 1993 correspondence stated: "Your delay in responding to these requests is making it impossible for us to gather information critical to our case." Brown's counsel had indicated that if discovery responses were not received by April 9, 1993, a motion to compel would be filed. On April 8, 1993, the Assistant Attorney General

of the work required by the school to qualify for the J.D. or LL. B. degree may appear as counsel in the trial or appellate courts of this state. . . ." subject to various conditions. The University of Iowa College of Law is a "reputable law school" as that term is used in Rule 120 and defined by Iowa Court Rule 106.

requested an extension to April 20, 1993 "in which to send the formal response to your discovery requests."

Not surprisingly, Andre also sought similar discovery from the Defendants. On April 22, 1993, Andre served a set of interrogatories pursuant to Federal Rule of Civil Procedure 33 and a request for production of documents pursuant to Federal Rule of Civil Procedure 34 on the Defendants. Following the expiration of the thirty day time period for responses to the interrogatories and request for production of documents contained in Rules 33(a) and 34(b), Brown's and Andre's counsel again wrote the Assistant Attorney General on June 4, 1993, requesting responses to the two requests for production of documents and two sets of interrogatories which were then well overdue. The response to the first request for production of documents was more than six months overdue. The response to the first set of interrogatories was more than three months overdue. Brown's and Andre's counsel indicated if they did not receive a formal response to the outstanding discovery requests by June 15, 1993, they would "be forced to file a motion to compel with costs."

The Assistant Attorney General did not respond to the June 4, 1993 correspondence from Brown's and Andre's counsel. Having received no response, Brown's and Andre's counsel telephoned the Assistant Attorney General on June 23, 1993.[3] The purpose of the call was to comply with Local Court Rule 14(e) which provides that:

> no motion relating to depositions or other discovery shall be filed by the Clerk unless counsel for the moving party files an affidavit stating that counsel has conferred personally with counsel for the opposing party in good faith to resolve by agree-

ment the issues raised by the motion without the intervention of the Court, has been unable to reach such agreement and that the resulting motion is therefore contested.[4]

During the June 23, 1993 telephone conference, the Assistant Attorney General indicated she had not yet obtained the documents necessary to respond to Brown's and Andre's discovery requests. Brown's and Andre's counsel informed the Assistant Attorney General that a motion to compel would be filed on or about June 24, 1993.

### D. The Motion to Compel

On June 29, 1993, Brown's and Andre's counsel filed a Motion for Order to Compel Production of Documents and Answers to Interrogatories. As the court observed in the first sentence of this opinion, the motion to compel is exquisitely simple. The motion itself is only three pages and the accompanying "memorandum" is four unnumbered pages which fail to cite any authority or text of any rule of civil procedure. Rather, it merely rehashes the straightforward chronology outlined above, and contained in the simple motion to compel.

Consistent with her prior repeated failures to respond to Brown's and Andre's discovery requests, the Assistant Attorney General failed to file a response or resistance to Brown's and Andre's June 29, 1993 motion to compel. Having received no resistance from the Defendants, Brown's and Andre's motion to compel was granted by order of this court on July 26, 1993. The Defendants were ordered "to provide Plaintiff and Intervenor with detailed complete answers to the interrogatories and request for production of documents within ten days" from the July 26, 1993 order. The Defendants and their coun-

---

**3.** Brown's and Andre's motion to compel and memorandum in support of motion indicate that the call took place on June 23rd. Plaintiffs' counsel's affidavit indicates the telephone call took place on June 24th. This discrepancy is immaterial. What is important is that the Assistant Attorney General does not dispute the substance of the telephone call.

**4.** Rule 14(e) was designed with a specific purpose in mind. "Attorneys are expected to do all that is within their power to work out discovery

problems between themselves. Only after all attempts have failed should the Court become involved." *Browning v. Grote Meat Co.,* 703 F.Supp. 790, 795 (E.D.Mo.1988).

Compliance with rule 14(e) will "eliminate unnecessary litigation regarding discovery when the parties could confer and reach a mutually acceptable resolution of the discovery dispute." *Hunter v. Moran,* 128 F.R.D. 115, 116 (D.Nev. 1989).

sel failed to comply with this court order. Additionally, because Brown and Andre had requested attorney fees as part of their motion to compel, a hearing was scheduled for September 1, 1993. At the commencement of the September 1, 1993 hearing, the Assistant Attorney General claimed she had not received notice of the hearing and had not had sufficient time to review and thus resist Brown's and Andre's counsels' affidavits in support of their requests for attorney fees. The hearing was rescheduled for September 7, 1993. On September 7, 1993, the hearing could not proceed because the Assistant Attorney General was ill and not at work. Therefore, the hearing was rescheduled again for September 8, 1993.

### E. Brown's and Andre's Counsel's Request for Attorney Fees

The plot thickens. On August 24, 1993, one of the legal interns filed an affidavit of attorney fees indicating he had "spent 18.5 hours of my time in efforts related to securing discovery responses from Defendants and bringing the Motion to Compel Production of Documents and Answers to Interrogatories...." The legal intern requested $1,017.50 on his own behalf (18.5 hours times the requested hourly rate of $55.00) as well as an additional $55.00 for an hour of time spent by one of his fellow legal interns. The legal intern's affidavit indicates the hourly rate is based on a conversation he had with the president-elect of the Iowa Association of Legal Assistants. The legal intern, by analogy, claims the $55.00 hourly fee for his time, because it "is a typical billing rate for paralegal work." Affidavit of Attorney's Fees filed August 24, 1993, p. 3. The legal intern further stated in his affidavit that "[a]ll of the services set out in this Affidavit were actually performed and were necessary to properly represent the interests of the Plaintiff and Intervenor in this case. I make this Affidavit for the purpose of assisting the court in its determination ..." of what fees are to be appropriately awarded. Id.

On the same day the legal intern's fee affidavit is filed, Andre's counsel filed an affidavit requesting 1.2 hours at $90.00 per hour. Thus, the legal intern and Andre's counsel request a total of $1,180.50.

Following the brief hearing on September 8, 1993, three supplemental attorney fee affidavits were filed by Brown's and Andre's counsel. A second legal intern requested 11.5 hours at $55.00 per hour for a total of $605.00. This time was expended after the original motion to compel had been ruled upon by this court. The supplemental affidavits of Brown's and Andre's counsel allege that this time was spent in preparation for the September 8, 1993 hearing to determine the amount of the fees. A third legal intern also filed an affidavit on September 15, 1993. In this affidavit, she requested 9.5 hours at $55.00 per hour for a total amount of $508.75. Like the affidavit of her fellow legal intern, her time claimed arises entirely after the motion to compel was ruled upon by the court on July 26, 1993. Finally, one of the clinical law professors at the University of Iowa College of Law, who is also co-counsel for Brown and Andre, filed an attorney fee affidavit on September 15, 1993. Her affidavit indicates she spent 3.5 hours on matters relating to the motion to compel but she does "not intend to seek reimbursement for the time I have spent supervising students on this case to date." Rather, she filed the affidavit "in order to assist the court in its determination of what fees are reasonable...." Supplemental affidavit regarding attorneys' fees filed September 15, 1993, p. 1–2.

Thus, Brown's and Andre's counsel have submitted affidavits and supplemental affidavits claiming a total of $2,294.25 in fees and $14.04 in costs for a total of $2,308.29 for this simple motion to compel.[5]

At the September 8, 1993 hearing, in response to a question from the court concerning the reasonableness and the amount of fees requested, Brown's and Andre's counsel reduced the 18.5 hours claimed by the first legal intern to 12.5 hours based on their view that as "a law student in a legal clinic he is probably not able to discharge his duties as efficiently as, say, a practicing attorney

---

5. The $14.04 in costs claimed, requested in paragraph 4 of the supplemental affidavit dated Sep-

tember 15, 1993, are for the aborted September 1, 1993 telephonic conference call.

would have been able to." Thus, Brown's and Andre's counsel now claim a total of $1,978.29 in reasonable attorney fees and costs.

On September 8, 1993, following the hearing on the motion to compel, the Assistant Attorney General filed an untimely Resistance to to [sic] Plaintiff and Plaintiff–Intervenor's Request for Attorneys Fees. In this untimely resistance, the Assistant Attorney General makes the odd assertion that Brown's and Andre's counsel are not entitled to attorney fees because they "received no documents or other information which they would not have received but for the order compelling production." Resistance to Plaintiff and Plaintiff–Intervenors' Request for Attorney Fees filed September 8, 1993, p. 2, ¶ 4.

On September 24, 1993, the Assistant Attorney General filed a timely resistance to the supplemental requests for attorney fees. The resistance asserts that both the time expended and the requested hourly rate are unreasonable. The court notes that this resistance to the supplemental request for attorney fees was the first pleading by the Assistant Attorney General discussed in this opinion which was timely under the Federal Rules of Civil Procedure.

## II. ANALYSIS.

### A. Federal Rule of Civil Procedure 37(a)(4) and Substantial Justification

■ The starting point for determining whether Brown and Andre and their counsel are entitled to reasonable expenses, including reasonable attorney fees, in obtaining the July 26, 1993 order to compel, is Federal Rule of Civil Procedure 37(a)(4). Federal Rule of Civil Procedure 37(a)(4) provides in relevant part that:

> If the motion [to compel] is granted, the court shall ... require the party ... whose conduct necessitated the motion ... to pay ... the reasonable expenses in-

curred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was *substantially justified* or that other circumstances make an award of expenses unjust. (emphasis added).

"A reading of the Rule leads to the inescapable conclusion that the award of expenses is mandatory against a party whose conduct necessitated a motion to compel discovery, ... 'unless the court finds the opposition to the motion was substantially justified....'" *Cal Dive Int'l, Inc. v. M/V Tzimin,* 127 F.R.D. 213, 217 (S.D.Ala.1989) (quoting *Merritt v. International Bhd. of Boilermakers,* 649 F.2d 1013, 1019 (5th Cir.1981)); *American Hangar, Inc. v. Basic Line, Inc.,* 105 F.R.D. 173, 176 (D.Mass.1985). "The greatest operative principle of Rule 37(a)(4) is that the loser pays." 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure:* § 2288 (1970).

There is no bright line standard for "substantial justification," and courts must use discretion when deciding whether opposition to a motion to compel is substantially justified. *Cuno, Inc. v. Pall Corp.,* 117 F.R.D. 506, 509 (E.D.N.Y.1987); *see Alvarez v. Wallace,* 107 F.R.D. 658, 662 (W.D.Tex.1985). "Whether opposition to a motion to compel is substantially justified depends on the circumstances of the particular case." *Transcontinental Fertilizer Co. v. Samsung Co., Ltd.,* 108 F.R.D. 650, 653 (E.D.Pa.1985); *American Hangar,* 105 F.R.D. at 176 (citing 4A James W. Moore et al., *Moore's Federal Practice,* ¶ 37.02 (2d ed. 1992)). However, courts have generally focused on "the quality of the justification and the genuineness of the dispute; where an impartial observer would agree that a party had good reason to withhold discovery," when determining whether opposition is substantially justified. *Alvarez,* 107 F.R.D. at 662; *Cal Dive,* 127 F.R.D. at 217; *see American Hangar,* 105 F.R.D. at 176–77; *Transcontinental Fertilizer,* 108 F.R.D. at 653.[6]

---

6. The "genuine dispute" language many courts have focused on is outlined in the Advisory Committee's Notes on 1970 Amendments to Federal Rule of Civil Procedure 37(a)(4) which provides in relevant part:

On many occasions, to be sure, the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter

The Supreme Court in *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), established the meaning of "substantially justified" within the context of the Equal Access to Justice Act, 28 U.S.C. § 2412(d). In its analysis, the Court recognized the meaning that lower courts have attached to "substantially justified" in the context of Rule 37(a)(4) and (b)(2)(E). The Court stated that under Rule 37, "[substantially justified] has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' ... or 'if reasonable people could differ as to [the appropriateness of the contested action]....'" *Pierce*, 487 U.S. at 565, 108 S.Ct. at 2550 (quoting *Reygo Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir.1982)) (citations omitted).

■ The court finds that Defendants' position was not substantially justified within the meaning of Federal Rule of Civil Procedure 37(a)(4). Nor does the court find that "other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(a)(4). Indeed, the Assistant Attorney General failed to even file a resistance to Brown's and Andre's motion to compel. In the absence of any resistance, Defendants' position cannot be substantially justified. *See e.g., M & D Builders, Inc. v. Pack*, 109 F.R.D. 410, 412 (D.Mass.1986) ("Since no opposition to the motion to compel was filed, it is impossible to find any 'substantial justification' to the opposition."). The Assistant Attorney General's assertion

in her untimely resistance to the attorney fees being claimed by Brown's and Andre's counsel that they are not entitled to attorney fees because they "received no documents or other information which they would not have received but for the order compelling production" totally misses the mark. The motion to compel was necessary because the Defendants and the Assistant Attorney General failed to appropriately respond to Brown's and Andre's pending discovery requests. The fact that through Brown's and Andre's motion to compel they ultimately received the documents to which they were entitled is completely irrelevant to the question of whether the recalcitrant Defendants' position in failing to respond to the outstanding discovery requests is substantially justified. Defendants' position is not substantially justified within the meaning of Rule 37(a)(4) and Brown's and Andre's counsel are clearly entitled to reasonable fees and expenses.

### B. Rule 37(a)(4)—Reasonable Expenses and Attorney Fees

■ Notwithstanding the simplistic nature of the motion to compel, Brown's and Andre's counsel filed affidavits and supplemental affidavits claiming $2,294.25 in attorney fees and $14.04 in costs, for a total of $2,308.29 in attorney fees and expenses. This claim was voluntarily reduced by a mere $330.00 in response to the court's inquiry regarding excessive fees at the September 8, 1993 hearing.[7] Thus, Brown's and Andre's counsel

to court. But the rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine issue exists. And the potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests or objections to discovery.

*See* 4A James W. Moore et al., *Moore's Federal Practice*, ¶ 37.02 (2d ed. 1992).

7. The court is perplexed as to why Brown and Andre's counsel waited until after the court's inquiry regarding the reasonableness of their requested fees at the September 8, 1993 hearing to voluntarily reduce their fee request. Indeed, both the United States Supreme Court and this court have made clear that the exercise of billing judgment "is an important component in fee setting." *Houghton v. Sipco, Inc.*, 828 F.Supp. 631, 639 (S.D. Iowa 1993) (citing *Hensley v.*

*Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983)). Waiting until the actual fee hearing to inform the court and opposing parties of the willingness to exercise billing judgment undermines several important goals. First, waiting until the last possible moment to exercise billing judgment dramatically reduces the likelihood that the parties will enter into a voluntary settlement regarding attorney fees. Second, it requires further expense to the opposing party by requiring that party to oppose a fee request that it otherwise might not if the billing judgment was exercised simultaneously with the filing of the initial fee request. Third, it unnecessarily involves the court in a fee hearing which otherwise may be resolved by the early exercise of billing judgment. Finally, by waiting until the last possible moment to exercise billing judgment, the credibility of the billing judgment may, in some circumstances, seriously be called into question.

now claim $1,978.29 in fees and costs. The court finds that this claim, even as revised, is grossly excessive. In response to this unreasonable fee request, the court may either reduce it or, in severe situations, deny the requested fees altogether.

In a related context, the award of attorney fees under various civil rights fee-shifting statutes, the federal courts have consistently held that an intolerably inflated fee request justifies a complete denial of fees. *Lewis v. Kendrick*, 944 F.2d 949, 958 (1st Cir.1991). In *Kendrick*, the court stated:

> [A]ppellant's counsel submitted a claim which was so intolerably inflated that the District Court was warranted in departing from the usual practice and reacting vigorously to prevent such abuse of the court's authority to award reasonable compensation to counsel.
>
> . . . .
>
> If, as appellant argues, the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.

*Kendrick*, 944 F.2d at 958 (quoting *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir.1980)). *See also Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605, 607 (7th Cir.1982); *Hall v. Borough of Roselle*, 747 F.2d 838, 841–42 (3rd Cir.1984); *Jordan v. United States Dept. of Justice*, 691 F.2d 514, 518–21 (D.D.C.1982); *Thelen Oil Co., Inc. v. Fina Oil & Chemical Co.*, 962 F.2d 821, 824 (8th Cir.1992); *Cf. Zabkowicz v. West Bend Co.*, 789 F.2d 540, 548–50 (7th Cir.1986) (following holding of *Vocca v. Playboy Hotel of Chicago, Inc.* and *Brown v. Stackler*, but reversing district court's total denial of fees as an abuse of discretion).

■ Brown's and Andre's counsel's extraordinary fee request is simply not justified for work performed on their very ordinary motion to compel. The court, however, agrees with the statement in *Jordan* that:

> [t]otal denial of requested fees as a purely prophylactic measure, however, is a strin-

gent sanction, to be reserved for only the most severe of situations, and appropriately invoked only in very limited circumstances.

*Jordan*, 691 F.2d at 518. While the court considers the fee request to be troubling, particularly in light of the fact that the excessive fees are claimed by legal interns, this is not such a severe situation where it would be appropriate to totally deny the fees.

■ Brown's and Andre's counsel should note that a request for attorney fees under Federal Rule of Civil Procedure 37(a)(4) should be made in good faith and not as an opening gambit in negotiations. Moreover, "[t]he lawyer must not abandon self-restraint or careful billing judgment because of the expectation that the obligation to pay the fee will be statutorily shifted to the losing party." *Borough of Roselle*, 747 F.2d at 841. As one court has noted, fee-shifting provisions are designed to "ensure effective access to the judicial process ... not to serve as a full employment or continuing education programs for lawyers and paralegals." *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir.1992) (citation omitted).

■ Additionally, there was also a substantial learning curve involved for the five legal interns. While clinical experience is an admirable and important component of legal education, it is simply unfair to the Defendants to shift all of the legal interns' time to Defendants' pocketbook. In this regard, the statement by the court in *Robert M. v. Benton*, 671 F.2d 1104, 1107 (8th Cir.1982), is applicable:

> [P]laintiff's attorney did not have any past experience with such cases, in that when plaintiff's counsel became involved in this matter, he had just recently graduated from law school and could be termed "inexperienced." In fact, the Court concludes plaintiff's counsel became "experienced" and learned from the proceedings in this matter. For this reason, the Court is of the opinion that plaintiff's attorney spent what this Court believes to be time educating himself, which is commendable, but which should not be charged to the defendant.

A review of Brown's and Andre's counsel's attorney fee affidavits indicate their clear excesses. For example, the first legal intern is claiming six hours for determining "the correct legal procedure to follow in filing a motion to compel." While it is understandable that a legal intern may not know the correct legal procedure for filing a motion to compel, it is grossly excessive to expect the Defendants to pay for his education. Indeed, less than a fifteen minute session with the legal intern's supervisor should have been all that was necessary to explain how to find Federal Rule of Civil Procedure 37 and file a motion to compel. The same legal intern claims seven hours for drafting the motion to compel and the memorandum. This is clearly excessive and could easily have been drafted by more experienced counsel in less than one hour. The 9.25 hours claimed by the second legal intern and the 11.5 hours claimed by the third legal intern are clearly duplicative. Both request time for redundant services. For example, both claim three-quarters of an hour for "meeting to discuss preparation needed for hearing on award of attorney fees...." Each legal intern claims more than six hours for legal research. In general, "the time for two or three lawyers in a courtroom or conference, when one would do 'may obviously be discounted.' " *Hart v. Bourque,* 798 F.2d 519, 523 (1st Cir.1986) (quoting *King v. Greenblatt,* 560 F.2d 1024, 1027 (1st Cir.1977), *cert. denied* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978)); *see also Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 953 (1st Cir.1984); *Lipsett,* 975 F.2d at 938. While two legal interns undoubtedly received some valuable experience by preparing for and participating in the September 8, 1993 attorney fees hearing, it is unconscionable to attempt to shift all of their time and duplication to the Defendants' pocketbook.

While the court holds that Brown's and Andre's counsel's claim for attorney fees is clearly excessive, the court acknowledges that the legal interns have not had the opportunity to acquire either the experience or judgment to know better. As the court noted in *Borough of Roselle,* 747 F.2d at 841, "[t]he line between a reasonable and unreasonable expenditure of time in pursuit of a client's cause is not always clearly evident to counsel, especially in the heat of battle."

The court finds that Brown's and Andre's counsel undoubtedly expended the hours claimed. The court holds, however, that counsel spent more time on various tasks than was reasonably necessary and that much of the time expended was duplicative and, therefore, not compensable. While the effort demonstrated by the legal interns here is commendable, the vast majority of it simply is not compensable.

While the amount of excessive fees claimed is small, the principle at stake raises fundamental concerns that emanate far beyond this case. The escalating cost of civil litigation runs the grave risk of placing redress in the federal courts beyond the reach of all but the most affluent. Judge Selya [8] eloquently stated this position nearly seven years ago in *Anthony v. Abbott Lab,* 106 F.R.D. 461, 465 (D.R.I.1985):

> Our citizens' access to justice, which is at the core of our constitutional system of government, is under serious siege. Obtaining justice in this modern era costs too much. The courts are among our most treasured institutions.... [T]he skyrocketing costs of litigation have not sprung full-blown from nowhere. Those costs are made up of bits and pieces, and relaxation of standards of fairness in one instance threatens further escalation across the board. The effective administration of justice depends, in significant part, on the maintenance and enforcement of a reasoned cost/benefit vigil by the judiciary.

A decade ago our court of appeals warned that "excess costs and delays will geometrically multiply, and the result will be the denial of justice in our courts." *Jaquette v. Black Hawk County,* 710 F.2d 455, 464 (8th Cir.1983).

---

**8.** Judge Selya was elevated to the United States Court of Appeals for the First Circuit in October, 1986.

The concerns articulated by the court in *Jacquette* and *Abbott Lab* are even more acute now.[9] Indeed, Congress recently passed the Civil Justice Reform Act of 1990, 28 U.S.C. §§ 471–482. This legislation mandates that each federal district court, after study by an advisory group, implement a plan to reduce the expense and delay in civil litigation in federal courts by providing for just, speedy and inexpensive resolution of civil disputes. 28 U.S.C. § 471. Additionally, the Federal Rules of Civil Procedure, including Rule 37(a)(4), "shall be construed to secure the just, speedy, and *inexpensive* determination of every action." Fed.R.Civ.P. 1. (emphasis supplied).[10]

These judicial and legislative concerns regarding the escalating costs of civil litigation in federal courts cannot be ignored here. Unreasonable delays in discovery and excessive fee requests may be the tip of an immense iceberg. However, the serious problem of the escalating cost of civil litigation is "made up of bits and pieces...." *Anthony*, 106 F.R.D. at 465. The court in *Geiserman v. MacDonald*, 893 F.2d 787 (5th Cir.1990), also observed that the flouting of discovery deadlines causes substantial harm to the judicial system. The court stated:

> [d]elays [in litigation] are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to

reasonable deadlines is critical to restoring integrity in court proceedings.

*Id.* at 792.

With these concerns in mind, the court determines that Brown's and Andre's counsel are entitled to reasonable attorney fees in the amount of $378.00 as well as their costs of $14.00. This represents Andre's counsel's requested time of 1.2 hours at $90.00 per hour plus an additional three hours at $90.00 per hour. This is based on the court's determination that the services performed by the legal interns could have easily been performed by a reasonably competent and experienced lawyer in three hours and that a reasonable hourly rate would be $90.00.[11]

■ The court determines that $100.00 of the $378.00 should be paid by the Assistant Attorney General personally—without any reimbursement from the Defendants or the State of Iowa as a result of her personal involvement in failing to timely respond to the motion to compel. *See Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 126, 110 S.Ct. 456, 460, 107 L.Ed.2d 438 (1989) (holding that Federal Rule of Civil Procedure 11 sanctions may be imposed only upon an individual attorney who signs the document rather than the attorney's law firm); *Eastway Const. Corp. v. City of New York*, 637 F.Supp. 558, 570 (E.D.N.Y.1986), modified 821 F.2d 121, 123 (2d Cir.), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987) ("[S]anctions are imposed against the attorney also for disciplinary purposes, as a punishment for dereliction of duty by an officer of the court who should know better. Allowing the client to reimburse the

---

9. *See generally* The Congressional Statement of Findings of the Civil Justice Reform Act of 1990, Pub.L. No. 101–650, § 102, and the legislative history at 1990 U.S.C.C.A.N 6802.

10. The proposed amendments to the Federal Rules of Civil Procedure, effective December 1, 1993, unless amended by Congress, in addition to amending 28 of the federal rules also amend the last sentence of Rule 1 as follows: "They shall be construed *and administered* to secure the just, speedy, and inexpensive determination of every action." 146 F.R.D. 535 (emphasis supplied). The Committee Notes to the proposed amendment to Rule 1 indicates that adding the phrase "and administered" "is to recognize the affirmative duty of the court to exercise the au-

thority conferred by these rules to ensure that civil litigation is resolved not only fairly *but also without undue cost or delay."* *Id.* (emphasis supplied).

11. The court believes this approach of estimating *the amount of time expended by a reasonably* competent lawyer· at a reasonable prevailing community market rate offers more precision than attempting to determine the reasonableness of legal interns' hours expended and hourly rates. The court has relatively little experience evaluating the work of law student legal interns. Also, the approach of using experienced counsel as a benchmark objectifies the process of calculating reasonable attorney fees.

attorney would interfere with the court's attempt to maintain discipline. Therefore, reimbursement by the client should be prohibited.")

## III. THE DEFENDANTS' FAILURE TO COMPLY WITH THIS COURT'S JULY 26, 1993 ORDER GRANTING MOTION TO COMPEL PRODUCTION.

█ During the September 8, 1993 hearing it was disclosed to the court that the Defendants had failed to timely comply with this court's July 26, 1993 order granting Brown's and Andre's motion to compel. That order provided that the Defendants provide to Brown and Andre detailed and complete answers to all outstanding discovery requests within ten days of the July 26, 1993 order. On October 4, 1993, this court entered an order to show cause why sanctions should not be imposed against the Defendants and the Assistant Attorney General pursuant to Federal Rule of Civil Procedure 37(b)(2) for the violation of this court's July 26, 1993 order. A reported telephonic hearing was held on October 28, 1993 to provide the Defendants and the Assistant Attorney General with an opportunity to show cause why Rule 37(b)(2) sanctions should not be imposed.

Pursuant to the court's July 26, 1993 order, the Defendants' responses to the discovery requests, utilizing the provisions of Federal Rule of Civil Procedure 6(a) were due on August 9, 1993.[12] Apparently, the response to Brown's and Andre's request for production of documents were hand-delivered to their counsel on August 11, 1993. At the October 28, 1993 hearing, the Assistant Attorney General represented that the original interrogatory answers were signed on August 11 but inadvertently placed in her file

and not served on Brown's and Andre's counsel. It was not until September 2, 1993, in preparation for the hearing on Brown's and Andre's request for reasonable expenses and attorney fees pursuant to Rule 37(a)(4) that the Assistant Attorney General discovered that the interrogatory answers had never been sent; she then promptly served the interrogatory answers.

Unlike Rule 37(a)(4), expenses and attorney fees which are mandatory (the Rule uses the word "shall"), sanctions pursuant to Rule 37(b)(2) appear discretionary (the Rule indicates that the court "may make such orders in regard to the failure as are just ...."). Even overlooking the Assistant Attorney General's inadvertence in timely serving the answers to interrogatories, she was not in compliance with the court order—albeit only two days late.[13] The court recognizes that "[t]he imposition of sanctions is a serious matter and should be approached with circumspection." Lupo v. R. Roland and Co., 857 F.2d 482, 485 (8th Cir.1988) (citing O'Connell v. Champion Int'l Corp., 812 F.2d 393, 395 (8th Cir.1987)), cert. denied, 490 U.S. 1081, 109 S.Ct. 2101, 104 L.Ed.2d 662 (1989). The court imposes a monetary sanction of $50.00 against the Assistant Attorney General personally. She may not be reimbursed from the Defendants or the State of Iowa. See Pavelic & LeFlore, 493 U.S. at 125, 110 S.Ct. at 460; Eastway Const. Corp., 637 F.Supp. at 570. The $50.00 sanction is payable to the Attorney Admission Fee Fund of the United States District Court for the Southern District of Iowa. This sanction is imposed in part because the record evidence demonstrates a consistent pattern of delay, which has resulted in this case not receiving a trial setting. If the only question before the court was whether a two day delay in responding to the court's July 26, 1993 order

12. It was Brown and Andre's counsel who raised the Rule 6(a) issue at the October 28, 1993 hearing. It was apparent that the Assistant Attorney General was surprised she was entitled to the extra time provided by Rule 6(a) and actually thought the discovery responses were due exactly ten days following the July 26, 1993 order. Federal Rule of Civil Procedure 6(a) provides in relevant part that "[w]hen the period of time prescribed or allowed is less than 11 days, inter-

mediate Saturdays, Sundays and legal holidays shall be excluded in the computation."

13. While the Assistant Attorney General was only two days late in attempting to comply with this court's July 26, 1993 order regarding motion to compel, her answers to Brown's discovery requests became due on November 30, 1992 and March 2, 1993 and her answers to Andre's discovery requests were due on May 22, 1993.

warranted sanctions, the answer would be in the negative.

## IV. CONCLUSION.

In *Jacquette v. Black Hawk County*, 710 F.2d 455, 462–63 (8th Cir.1983), the court observed:

> This case, although not unusual on its facts, exemplifies not only society's concern, but the profession's acknowledgment that there exists excessive cost and delay in litigation. The direct effect is the denial of reasonable access to justice in our courts. The entire administration of justice is involved. The searching question is why. Assuming counsel for each side acted in good faith, and we have no reason at this stage to suggest otherwise, nonetheless the time, expense and delay involved in the litigation of a relatively simple claim demands full judicial attention.

If this were a romance novel, the themes of avarice and spurned overtures might be enticing. However, in the context of concerns regarding cost and delay in civil litigation, this case, regrettably, serves as a troublesome metaphor for more serious and pervasive problems that, if left unchecked, will infect federal civil litigation with an incurable plague of cost and delay. It is imperative that federal trial court judges not let this happen. "Excessive costs of litigation is as much the court's concern as it is of counsel and litigants." *Id.* at 463.

Pursuant to Federal Rule of Civil Procedure 37(a)(4), the Defendants and the Assistant Attorney General shall pay the sum of $392.00 to Brown's and Andre's counsel as reasonable costs and attorney fees. One hundred dollars of this amount shall be paid by the Assistant Attorney General personally. These costs and attorney fees are imposed because the Defendants' position concerning Brown's and Andre's motion to compel was not substantially justified. Pursuant to Federal Rule of Civil Procedure 37(b)(2), the Assistant Attorney General is sanctioned $50.00, which she is to pay personally to the United States District Court for the Southern District of Iowa Attorney Admission Fee Fund as a result of a repeated pattern of delay culminating in her failure to timely respond to this court's July 26, 1993 order granting Andre's and Brown's motion to compel.

IT IS SO ORDERED.