**In re INDEPENDENT SERVICE ORGANIZATIONS ANTITRUST LITIGATION.**

**This Document Applies To CSU Holdings, Inc., et al. v. Xerox (D. Kan. No. 94–2102–EEO).**

**Civil Action No. MDL–1021.**

United States District Court, D. Kansas.

Feb. 19, 1997.

P. John Owen, Lori R. Schultz, Anne C. Wilson, Morrison & Hecker, Kansas City, MO, Eric D. Braverman, Morrison & Hecker, Overland Park, KS, Michael C. Manning, Morrison & Hecker, Phoenix, AZ, for CSU Holdings Inc., Copier Services Unlimited, Inc. and Copier Service Unlimited of St. Louis, Inc.

Peter K. Bleakley, Cathy A. Hoffman, Arnold & Porter, Washington, DC, Peter W. Marshall, Xerox Corp., Stamford, CT, Michael G. Norris, Norris & Keplinger, L.L.C., Overland Park, KS, for Xerox Corp.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendant's motion to strike CSU's copyright misuse affirmative defense, to compel compliance with the preliminary injunction, and for sanctions (Doc. # 360). After careful consideration of the parties' briefs, the court is now prepared to rule. For the reasons set forth below, defendant's motion will be granted in part.

On December 11, 1995, this court issued a preliminary injunction, which, in part, (1) required CSU to deliver to Xerox all unauthorized copies of Xerox manuals and floppy disks containing diagnostic software for the 5090 copier in its possession, and (2) restrained CSU from reproducing Xerox manuals and using any floppy disks or upgrade disks containing diagnostic software for the 5090 copier except pursuant to a license from Xerox. The parties disputed whether the order applied to all Xerox manuals or only manuals for the 5090 copier. This dispute was resolved at a hearing on July 23, 1996, when the court affirmed that the order applied to all Xerox manuals.

Xerox alleges that CSU has engaged in discovery abuse and failed to comply with the court's preliminary injunction. Xerox's allegations are based primarily on the following conduct: (1) CSU altered documents produced in discovery, (2) CSU refused to identify the source of Xerox disks that a CSU employee received, (3) in September 1996, CSU returned only a portion of the Xerox manuals in its possession, (4) also in September 1996, CSU failed to return all of the disks that it previously had identified in discovery responses, (5) in December 1996, CSU discovered 27 additional disks that were withheld from Xerox, and (6) CSU recently

discovered Xerox manuals that many of its employees had withheld from the previous production of manuals to Xerox. For the most part, CSU admits the above allegations and that it has violated the court's preliminary injunction. CSU contends, however, that its errors were inadvertent and that sanctions for such conduct would be inappropriate.

▇▇ Xerox urges the court to sanction CSU by striking CSU's copyright misuse affirmative defense and requiring CSU to reimburse Xerox for its attorneys' fees and costs incurred in obtaining CSU's compliance with the preliminary injunction. The court finds that CSU's conduct warrants some sanctions. The court incorporates its discussion of CSU's discovery abuses outlined in the court's August 1, 1996, order. In addition, the court notes the following instances which raise serious concerns about CSU's conduct in discovery and its efforts to comply with the court's preliminary. injunction.

In September 1996, CSU returned only a portion of the manuals it agreed to return in order to comply with the court's injunction. An internal CSU memorandum from the director of field operations to all service managers clearly indicates that CSU did not seek to return all of the Xerox manuals in its possession. CSU now admits that the scope of this memorandum was incorrect.

In October 1996, counsel for Xerox informed CSU of the discrepancy in the number of disks returned to Xerox and the number of disks identified in discovery. CSU admits that it failed to produce all of the disks it identified in discovery. CSU points to a number of internal miscommunications or mistakes for its failure to locate disks in three separate offices.

In December 1996, CSU discovered 27 additional disks for the 5090 copier. Most of these disks were found with machines located at customers' sites. CSU claims that most of these disks came with the machines when CSU purchased them from equipment brokers and CSU did not know it even had these disks. CSU will not be excused simply because compliance with the preliminary injunction was not always easy. CSU knew or should have known that both manuals and disks often came with machines it purchased. CSU accordingly should have had a policy in place to inspect new machines for manuals and disks.

In December 1996, CSU also discovered that many of its employees withheld photocopies of Xerox manuals in CSU's previous production to Xerox. These employees originally produced only a single copy of each Xerox manual. CSU fails to adequately explain why these employees did not understand the scope of the court's order. Further, as of February 4, 1997, CSU apparently still had not returned the remaining manuals to Xerox despite CSU's promise that the manuals would be returned during the week of January 20, 1997.

▇▇ In sum, most of CSU's errors, if viewed individually, could be considered inadvertent and in contravention of CSU's "policy" of compliance. The large number of errors, however, suggests that CSU management failed to take reasonable steps to inform its employees of its policy and the necessity of complying with the court's order. In addition, CSU is responsible for the actions of its employees even if such actions were not expressly authorized by CSU management. *See, e.g., Liu v. Republic of China,* 892 F.2d 1419, 1430 (9th Cir.1989) (mere fact that employee violated employer's express rules does not relieve employer from liability); *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1417 (10th Cir.1987) (employer may be liable for hostile work environment despite employer's lack of actual knowledge). CSU's recent efforts since November 1996 simply do not excuse its noncompliance with the court's order.

The court cautions CSU that it must take all reasonable steps to ensure that it does not further violate the court's injunction. Compliance with the court's injunction is long over due. Despite CSU's failure to get its house in order, the court does not believe that CSU's discovery conduct and violations of the court's injunction warrant the extreme sanction of striking its copyright misuse affirmative defense. *See Parrott v. Wilson,* 707 F.2d 1262, 1273 n. 26 (11th Cir.1983) (striking a defense "should remain a sanction

of last resort, applicable only in most extreme circumstances"); *see also Cal Dive Int'l, Inc. v. M/V Tzimin,* 127 F.R.D. 213, 215 (S.D.Ala.1989) (exclusion of evidence is a severe remedy and should be imposed with caution). Such a sanction, which could cost CSU as much as $90 million, would be too severe in these circumstances. In addition, the prejudice and harm to Xerox of CSU's actions appears to be minimal and can be remedied with less severe sanctions. *See Cal Dive,* 127 F.R.D. at 215 (court should limit discovery sanctions to the least destructive form). For example, several CSU employees withheld backup disks from the initial production to Xerox in case such disks were needed in an emergency. CSU, however, already had purchased backup disks from Xerox for each CSU office and thus it had no need for the disks that were withheld.

The court therefore will award to Xerox, as sanctions against CSU, the costs (including attorneys' fees and expenses) incurred by Xerox in obtaining CSU's compliance with the injunction and notifying the court of CSU's violations of the injunction. These sanctions include the costs Xerox incurred in bringing its motion for sanctions for discovery abuse (Doc. # 292), its first motion to compel compliance with the preliminary injunction (Doc. # 234), and its second motion to compel compliance with the preliminary injunction (Doc. # 360). *See Allied Materials Corp. v. Superior Prods. Co., Inc.,* 620 F.2d 224, 227 (10th Cir.1980) (awarding attorneys' fees in contempt proceeding arising out of violation of consent decree); *Cook v. Ochsner Found. Hosp.,* 559 F.2d 270, 272 (5th Cir.1977) ("[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order."). Xerox shall serve and file an itemized statement of its costs within 60 days. CSU shall serve and file any objections within 10 days after service of Xerox's statement of costs.

In addition, CSU shall supplement its interrogatory response to identify any additional sources of Xerox software (including customers that are sources) and deliver to Xerox all unauthorized copies of Xerox manuals before March 3, 1997.

Any further violation by CSU of the court's injunction will leave the court no alternative but to impose significant sanctions, such as large monetary sanctions for each unreturned manual and disk, and striking certain claims and defenses asserted by CSU.

IT IS THEREFORE ORDERED that Xerox's motion for sanctions (Doc. # 360) is granted in part as set forth herein.