**CHAPMAN'S GOLF CENTER, Appellant,**

v.

**Ailee CHAPMAN, Appellee.**

**Ailee CHAPMAN, Plaintiff–Appellee,**

v.

**Edward COLE, Andrea Chapman Day f/k/a Andrea Cole, and Chapman's Fun World, Inc., Defendants–Appellants.**

**No. 93–1074.**

Supreme Court of Iowa.

Nov. 23, 1994.

Rehearing Denied Dec. 20, 1994.

James W. Affeldt of Elderkin & Pirnie, Cedar Rapids, for appellants.

John M. Titler and Elizabeth P. Jacobi of Lynch, Dallas, Smith & Harmon, P.C., Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and SNELL, JJ.

SNELL, Justice.

This appeal by defendants, Edward Cole, Andrea Chapman Day, and Chapman's Fun World, Inc., raises issues of the applicability of the business exception to our usury laws. Plaintiff, Ailee Chapman, foreclosed her installment contract with defendants and obtained a deficiency judgment that included interest exceeding the numerical rate fixed by statute. Defendants seek a reversal of the decision on the grounds that the transaction was usurious. We affirm.

I.  Statement of Facts

In October 1976 Edward Cole and Andrea Day entered into a written contract with Gene Chapman and Ailee Chapman for the purchase of Chapman's Golf Center in Cedar Rapids. The purchase price was $450,000 allocated specifically as follows:

| | |
|---|---|
| Land | $175,000 |
| Sports Center building | $100,000 |
| Pro Shop and apartment building | $ 50,000 |
| Golf course improvements | $ 90,000 |
| Equipment | $ 19,000 |
| Lighting system | $ 15,000 |
| Goodwill and intangibles | $  1,000 |
| Total | $450,000 |

The agreement provided that Cole and Day pay a down payment of $75,000 with the balance to be paid in quarterly installments. The interest rate for the first year was set at seven and three-eighths percent with the subsequent rate being calculated on the basis of one percent greater than the average prime interest rate. The agreement was modified several times regarding the date for making payments and the method for calculating the interest rate. In 1980, during a

time of rapidly rising interest rates, the parties had discussions about the interest rate on the outstanding balance of the purchase price. Ailee Chapman offered to have interest calculated on the basis of the prime rate only. Cole and Day subsequently made payments calculating interest on the basis of the prime rate. For the first time during the period of the contract the prime rate exceeded nine percent in January of 1979. In 1980 the prime rate reached fifteen percent.

In April 1991 Chapman notified Cole and Day that they were in default and directed that the default be cured. Cole and Day subsequently made a claim that the interest rate was usurious. Chapman then commenced a foreclosure action and Cole and Day, acting for Chapman's Golf Center, brought a specific performance action against Chapman. Chapman then requested attorney fees pursuant to the agreement. The two actions were consolidated.

After a trial the district court entered an order on March 18, 1993 determining that Cole and Day were in default and entered a judgment against them for the outstanding interest and principal. The court determined that even though the initial agreement was entered into prior to the effective date of the business purposes exception to the usury provisions, the exceptions applied to the agreement and subsequent modifications. The exceptions therefore precluded Cole and Day from using the defense of usury. The court concluded that Chapman was entitled to interest as the parties had agreed upon in the original contract and subsequent modifications.

On March 30, 1993 Chapman's Golf Center filed a timely motion for enlargement of the findings under Iowa Rule of Civil Procedure 179(b). On June 29, 1993 the district court denied the motion. This appeal followed.

On October 18, 1993 the parties filed a joint application for a limited remand. On October 20, 1993 this court granted the motion for the court to enter a foreclosure decree and rule on the application for attorney fees. The district court on November 9, 1993 entered a decree foreclosing the installment contract and awarded Chapman judgment for $259,709.15. The court also or-

dered Cole and Day to pay interest at the rate of six percent from the commencement of the case until December 31, 1992 and at six and one-half percent from January 1, 1993 until December 31, 1993. Attorney fees and costs of $19,689.16 were awarded to Chapman. On December 3, 1993 this court entered an order consolidating the two appeals. Defendants Cole and Day on appeal claim the agreement to purchase Chapman's Golf Center was not modified in 1980, was usurious, that the court applied statutory law incorrectly and should not have awarded attorney fees.

## II. Scope of Review

■ This case was tried in equity to the bench; our review is therefore de novo. Iowa R.App.P. 4. The fact findings of the trial court are given weight, especially when considering the credibility of witnesses but the appellate court is not bound by them. Iowa R.App.P. 14(f)(7). On statutory claims the appellate court is bound by the trial court's well-supported factual findings but not its conclusions of law. *Iowa Coal Mining Co. v. Monroe County*, 494 N.W.2d 664, 668 (Iowa 1993).

## III. Issues and Analysis

In 1976 when the contract was signed by the parties, the applicable interest rate fixed by statute was limited to nine percent. Iowa Code section 535.2(1) (1975) provided as follows:

> Except as provided in subsection 2 hereof, the rate of interest shall be five cents on the hundred by the year ..., unless the parties shall agree in writing for the payment of interest not exceeding nine cents on the hundred by the year.

The contractual agreement to pay interest at seven and three-eighths percent the first year was within the legal statutory limits in 1976 and 1977. After the first year the parties agreed to an interest rate of one percent greater than the average prime interest rate established in Chicago. This provision was within the statutory limit of nine percent until January 1979 when the prime rate exceeded nine percent. When that hap-

pened Cole and Day claim the contract became usurious and unenforceable. The remedy they seek is to obtain from Chapman a warranty deed to the property purchased upon payment to Chapman of the unpaid principal sum in the amount of $31,394.78. The unlawful interest contracted for by Chapman according to Cole and Day would limit her judgment to the principal sum as a penalty exacted under Iowa Code section 535.5. A further application of section 535.5 would require Cole and Day to pay the State of Iowa eight percent interest on the principal sum from the date of judgment.

During the course of the contract several changes were made by agreement of the parties. Chapman contends that each change constituted a modification of the contract and in effect a new contract resulted. There were six such changes. First, rather than paying interest accrued during 1977 in one lump sum on December 31, 1977, that interest was to be paid in four payments in April, July, September, and December 1977. This modification was effected by agreement on or about February 9, 1977. Second, sometime prior to July 1, 1979, Chapman, Cole, and Day agreed that the payments due on July 1, 1979, October 1, 1979, and January 1, 1980 would be calculated on the basis of the prime rate only rather than prime plus one percent.

A third modification occurred in May 1980. In a transaction not required by the original contract, Chapman transferred by warranty deed a parcel of land which was the subject of the agreement, thus modifying the contract again. The deed was duly recorded. Fourth, sometime between January and July 1980, the interest rate at which payments on the outstanding balance would be calculated was reduced to the prime rate rather than prime plus one percent. In July 1981 as requested by Cole and Day, Chapman gave them a second warranty deed to a substantial portion of the property covered by the agreement, thus modifying the contract a fifth time. Sixth, on or about March 15, 1982 Cole and Day requested that, rather than continuing with quarterly payments, they be allowed to make two payments: on June 30 of each year for the interest payable as of

that date; and on September 30 of each year for the interest payable December 31 of the same year. Chapman agreed to the modification due to her understanding that the business revenue from which the payments were to be made was seasonal, making it difficult to pay in January and April of each year.

From July 1977 through and including October 10, 1990, Chapman received payments without objection to the variability of the interest rate according to the prime rate. Some payments were late or partial while others were made in accordance with the agreed modifications. The last quarterly payment was made in October 1990. In April 1991 Cole and Day were notified that they were in default and should cure their default by a date certain. At that time the dispute arose that is the subject of this lawsuit as to whether the contract rate was reduced to prime only as of July 1980 and whether deferred interest could be added to the outstanding balance at the end of each year on which balance interest was calculated for the payments due the following year. It was at this time that Cole and Day raised the claim that the agreement was usurious.

■ The question of usury which revolves around the contract change that occurred in 1980 concerns whether a modification then occurred and whether the statutory exception of borrowing money for a "business purpose" applied. The parties do not dispute that the contract was lawful in 1976. A note that then provided for interest at a certain percentage above the "prime rate" was not usurious on its face. 47 C.J.S. *Interest and Usury* § 157, at 278 (1982). A contract is also not usurious on its face merely by reason of the fact that circumstances may arise in the future which could result in the contract becoming usurious. *See Farmland Enter., Inc. v. Schueman,* 212 Neb. 342, 345, 322 N.W.2d 665, 667 (1982).

The parties agree that the interest rate was changed by a modification of the contract to eleven and three-fourths percent which equaled the prime rate on January 1, 1979. All of the parties signed a statement to this effect that provided for the payments on July 1, 1979, October 1, 1979, and January

1, 1980. At the time of this modification the statutory law provided an exception to the nine percent limitation of Iowa Code section 535.2(1). That exception took effect August 2, 1978 and provided that a person could agree in writing to pay any rate of interest if the money borrowed was for a business or agricultural purpose in an amount exceeding $200,000. Such a transaction would not be subject to defense of usury. 1978 Iowa Acts ch. 1190, § 11 (codified at Iowa Code § 535.2 (1978)). The current statutory exception is substantially the same except that the beginning amount has been lowered to $25,000. "Business purpose" is defined in the statute as including but not limited to a commercial, service, or industrial enterprise carried on for profit and an investment activity. Iowa Code § 535.2(2)(a)(5) (1993).

In June 1980, the parties again engaged in negotiations regarding the interest amount. The result of these negotiations, Chapman claims, and the trial court found, was another modification of the contract. Cole and Day contend that no modification resulted because no document was signed by all of the parties, all of the terms were not fixed, and there was no meeting of the minds.

The trial court found that sometime between January and July 1980 Cole and Day proposed that the interest rate be changed to a flat rate of twelve percent. Chapman rejected that offer and counteroffered that the interest rate be lowered to the prime rate of fifteen percent. The trial court found that the counteroffer was accepted, thus modifying the contract.

Evidence of acceptance of Chapman's counteroffer is found in a letter signed by Ed Cole on January 3, 1980 stating:

Dear Ailee,

Thanks for your letter concerning mortgage payments. I am sorry the 12% flat rate was not acceptable but greatly appreciate your offer to reduce our interest to prime rate rather than 1% above prime. At the January 1, 1980 prime rate (15%) our 1980 interest due comes to $52,987.21, or $13,247.30 per quarter. The first quarter we paid $13,458.00. Therefore, I am enclosing a check for $13,036.47 to bring us up to date through June 3, 1980.

The court also found that payments were thereafter made at the fifteen percent prime rate. The court further found that payments were made from July 1977 through October 10, 1990 without objection to the variability of the interest rate and in accordance with the various modifications.

The record contained substantial evidence to support the trial court's finding that a modification of the contract occurred in June 1980. The letter from Ed Cole is in the language of an acceptance rather than being an invitation to further negotiations. This was followed by payments by Cole and Day in accordance with Ed Cole's letter. There was a meeting of the minds on the crucial issue of interest rate. Moreover, this interpretation fits the history of the numerous preceding modifications of the contract.

■ Cole and Day further claim that even if a modification occurred, it did not bind Andrea Day because she did not sign the letter. There is, however, evidence of apparent authority in Cole to act for Day. They were co-purchasers and had acted together on all matters involving prior contract modifications. In addition, Day raised no objection to the 1980 modification and made payments with Cole in accordance with it. *Mermigis v. Servicemaster Indus.*, 437 N.W.2d 242, 246 (Iowa 1989); Restatement (Second) of Agency §§ 15, 15 cmt. a, 16 (1958).

■ When the contract was modified in 1980, a new contract arose. *DeWaay v. Muhr*, 160 N.W.2d 454, 456 (Iowa 1968); 17A C.J.S. *Contracts* § 379, at 440–42 (1963). The law governing the contract then would be the statutes in effect at the time of the modification rather than at the time the agreement was first entered. *Frets v. Capitol Fed. Sav. & Loan Ass'n*, 238 Kan. 614, 712 P.2d 1270, 1276 (1986); *see also* 17A Am.Jur.2d *Contracts* § 381, at 402–06 (1991).

■ In 1980 the "business purpose" exception was a part of the statutory usury law. The trial court found the transaction was for a business purpose and applied the usury exception of Iowa Code section 535.2(2)(a)(5) to it. The court's finding that the entire transaction had no other purpose than to

allow Cole and Day to operate Chapman's Golf Center is supported by the evidence. The fact that a great portion of the purchase price was allocated to the purchase of real estate does not defeat the business purpose because the real estate was essential to running the golf business. Business loan exceptions are intended "to give vitality to business financing, to make financing more available to small business ventures by exempting such transactions, whether evidenced by loans in the conventional sense or by any other financing." *Richards v. Arthaloney,* 216 Neb. 11, 18, 342 N.W.2d 642, 646 (1983). When the entire transaction for the installment purchase of the golf center is considered, the goals of the business purpose exception are clearly met.

Cole and Day also argue that the trial court should not have applied the "business exception" under Iowa Code section 535.2(2)(a)(5) to the transaction but should have applied Iowa Code section 535.2(4)(a) instead. That section provides:

*Notwithstanding the provisions of subsection 3,* with respect to any agreement which was executed prior to August 3, 1978, and which contained a provision for the adjustment of the rate of interest specified in that agreement, the maximum lawful rate of interest which may be imposed under that agreement shall be nine cents on the hundred by the year, and any excess charge shall be a violation of section 535.4.

(Emphasis added.)

 The beginning phrase of 4(a), *i.e.* "Notwithstanding the provisions of subsection 3," refers to a formula set out in subsection three for computing a maximum lawful interest rate based on government notes and bonds. Neither subsection 4(a) nor 3(a) makes any reference to the "business purpose" exception to the usury laws. Subsection 4(a) does not by its language or by inference negate the business purpose exception established by section 535.2(2)(a)(5). We hold that Iowa Code section 535.2(2)(a)(5) is not modified or supplanted by Iowa Code section 535.2(4)(a), and was correctly applied to the 1980 contract modification of the parties.

As part of the foreclosure of the note and real estate mortgage the trial court awarded costs to Chapman of $19,689.16 which included attorney fees. Cole and Day claim error in awarding attorney fees based on their usury defense, lack of reasonable notice of the acceleration of their note by Chapman, and insufficient evidence of the value of attorney services rendered for Chapman. We have examined each of these assertions and find they have no merit. The 1976 contract terms support the award of attorney fees by a provision for the assessment of attorney fees in the event of suit by Chapman to enforce the contract.

We have considered all of the arguments raised on appeal and have concluded that there is no basis for reversal.

The trial court's judgment is affirmed.

**AFFIRMED.**