The COOPERATIVE FINANCE
ASSOCIATION, INC.,
Plaintiff,

v.

David GARST and Marilyn
Garst, Defendants.

David GARST, Counterclaimant,

v.

The COOPERATIVE FINANCE AS-
SOCIATION, INC., Counter-
claim Defendant.

No. C 94–3052–MWB.

United States District Court,
N.D. Iowa,
Central Division.

June 11, 1996.

Mark A. Shaiken of Stinson, Mag & Fizzell, P.C., in Kansas City, Missouri, Rodney P. Kubat of Whitfield & Eddy, P.L.C., in Des Moines, Iowa, local counsel, for Plaintiff/Counterclaim defendant CFA.

Peter Riley of the Tom Riley Law Firm, P.C., in Cedar Rapids, Iowa, for Defendant/Counterclaimant David Garst.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION FOR ATTORNEYS FEES**

BENNETT, District Judge.

## TABLE OF CONTENTS

I. BACKGROUND ................................................. 1182
 A. Procedural History ...................................... 1182
 B. The Fee Claim ......................................... 1183
II. LEGAL ANALYSIS ........................................... 1185
 A. Applicable Federal And Local Rules ..................... 1185
 B. Fee–Shifting ........................................... 1186
 1. The "American Rule" and the contract clause exception ... 1186
 2. Appellate review of fee awards ........................ 1187
 3. "Reasonableness" .................................... 1187
 4. Fee provisions and fees claimed here ................. 1188
 a. Applicable law ................................... 1188
 b. Construction of the fee-shifting provision ......... 1188
 c. Evaluation of the fee claim under applicable law ... 1189
III. CONCLUSION .............................................. 1193

This case calls to mind the aphorism of Judge Tamm of the District of Columbia Circuit Court of Appeals that "[t]o the old adage that death and taxes share a certain inevitable character, federal judges may be excused for adding attorneys' fees cases." *Kennedy v. Whitehurst,* 690 F.2d 951, 952 (D.C.Cir.1982). Having obtained by summary judgment the balance and interest due on a defaulted promissory note, a lender, citing fee-shifting provisions in the loan agreement and note, now seeks to recovery attorneys fees as well. Notwithstanding the contractual fee-shifting provisions, requiring the debtor to pay the lender's costs of recovering a judgment upon default on the loan, the court must scrutinize the lender's fee request under the lens of reasonableness. Here, the plaintiff lender has submitted a fee and expense claim roughly equal to the

amount of the judgment the lender recovered on the note for the unpaid balance and accrued interest. The lender asserts that the fee claim should be considered in proportion to the multi-million dollar value the debtor placed upon his counterclaim, while the debtor argues that, even apart from any issues he injected into the litigation, the lender's suit was overdone from the start. The court confronts the question, how much of the cost of a "Rolls Royce" prosecution and counterclaim defense may reasonably and fairly be shifted to a debtor under a contractual fee-shifting provision?

## I. BACKGROUND

This matter comes before the court pursuant to the March 7, 1996, motion of plaintiff and counterclaim defendant Cooperative Finance Association, Inc. (CFA), for an award of attorneys fees and expenses against defendant David Garst. CFA's motion is made pursuant to *Fed.R.Civ.P.* 54(d) and N.D.Ia. LR 22. CFA seeks an award of attorneys fees in the amount $81,845.00 and expenses in the amount of $10,700.20 purportedly incurred in its prosecution of claims to enforce a loan agreement and promissory note, the so-called 1993 Revolver Note, as well as in CFA's defense to Garst's counterclaims. The note provided, in pertinent part, that "Borrower will pay on demand, to the extent permitted by applicable law, all costs of collection and attorney fees incurred or paid by Lender enforcing this Note on default."

In granting CFA's motion for summary judgment against Garst on February 21, 1996, the court awarded the unpaid principal balance due on the 1993 Revolver Note in the amount of $82,148.78, plus interest in the amount of $8,869.78 accrued as of May 15, 1995, plus further interest accrued at the per diem rate of $36.57 to the date of the judgment, which amounted to an additional $6,911.72. The court also concluded that CFA was entitled to the award of reasonable attorneys fees under the terms of the 1993 Revolver Note at issue. A brief review of the procedural history of this litigation and the court's conclusions in the summary judgment ruling is necessary in order to assess what fee award is reasonable. Also, in order to assess the reasonableness of the fees claimed, the court must survey the breakdown of fees by categories of work performed and a summary of the rates at which hours of service were billed, which CFA has provided pursuant to N.D.Ia. LR 22(a).

### A. Procedural History

The court does not propose to survey the entire procedural history of this matter previously stated in its summary judgment ruling. However, it is useful to note that CFA filed this diversity lawsuit on July 28, 1994, seeking a judgment in the amount of the outstanding balance on a note for a loan made to a farming partnership known as Double G Ranch (DGR). One of the two partners in DGR was defendant David Garst. CFA subsequently amended the complaint to include as a defendant Garst's estranged wife, who had also signed the note for the loan in question. Both defendants answered the amended complaint on September 22, 1994. David Garst then filed a counterclaim on October 6, 1994, alleging generally that CFA was barred from recovering on the note owing to various kinds of misconduct. CFA answered the counterclaim on October 24, 1994.

The record indicates that discovery in this case did not proceed smoothly. Eventually, on January 17, 1996, Chief Magistrate Judge John A. Jarvey entered an order, *inter alia,* striking David Garst's counterclaim for failure to make discovery, pursuant to *Fed. R.Civ.P.* 37(b)(2)(B) & (C), and for failure to comply with court orders, pursuant to *Fed. R.Civ.P.* 41(b). On February 6, 1996, although Judge Jarvey's order striking the counterclaim was not cast as a report and recommendation for dismissal, but as an order imposing discovery sanctions, in an abundance of caution, this court allowed the parties ten more days to state any objections to Judge Jarvey's determination that the counterclaim should be stricken.[1] Final disposition of the counterclaim was later made in

---

**1.** This court recognized something of a split in authority on the power of a magistrate judge to dismiss a claim or counterclaim as a discovery sanction, but declined to resolve that dispute in this litigation. The court therefore afforded the parties, and principally David Garst, one last opportunity to be heard on whether the counterclaim should remain part of this case.

the court's summary judgment ruling, which followed some time later.

In the midst of the discovery dispute that led to Judge Jarvey's dismissal of David Garst's counterclaim, CFA filed a motion on May 15, 1995, for summary judgment in its favor against both defendants on its own claim and against David Garst on his counterclaim. Both defendants resisted the motion for summary judgment. Defendant David Garst's resistance to the motion for summary judgment principally asserted the issues apparently, though imprecisely or vaguely, raised in his stricken counterclaim as grounds for denying CFA the judgment it sought on the 1993 Revolver Note. Additionally, his resistance asserted that CFA was improperly pursuing judgment against the Garsts on the 1993 Revolver Note instead of pursuing the other partner in DGR or the collateral identified in the companion security agreement. CFA's reply was that Garst had failed to generate any genuine issue of material fact concerning the loan or amount due thereon. CFA also argued that the other partner in DGR had the power to act as he did, thus binding the partnership and the signatories to the note for the amounts due, and furthermore both Garst's liability and the propriety of CFA's conduct were apparent under governing law.

On February 21, 1996, the court granted summary judgment in favor of CFA in the amount of the unpaid balance, interest, and attorneys fees due under the 1993 Revolver Note against David Garst, but not against Marilyn Garst. The court concluded, first, that David Garst's counterclaim and any defenses asserted therein were properly stricken by Judge Jarvey as a sanction for failure to make discovery and failure to comply with a court order compelling discovery. Because the counterclaim and defenses were stricken, CFA's motion for summary judgment on the counterclaim was denied as moot. The court also concluded that there were no genuine issues of material fact concerning CFA's entitlement to judgment on the 1993 Revolver Note and that CFA was entitled to judgment on the note as a matter of law. The court concluded that David Garst was liable as a partner on the debt of the partnership, but

that genuine issues of material fact precluded summary judgment in favor of CFA on Marilyn Garst's defense that she was an "accommodation party" on the 1993 Revolver Note, which might preclude her liability to CFA on the note. Therefore, the court held that judgment would be entered in favor of CFA against David Garst in the amount of the principal balance due upon the 1993 Revolver Note plus interest accrued. Such judgment was entered on February 22, 1996. In its summary judgment ruling of February 21, 1996, the court further directed CFA to file a post-judgment motion for an award of attorneys fees in compliance with N.D.Ia. LR 22 within twenty-one days of the date of the summary judgment order. That motion is now before the court.

### B. The Fee Claim

The motion seeks an award of fees for no less than twelve attorneys and paralegals who worked the case on behalf of CFA, some of whom were with CFA's principal law firm, Stinson, Mag & Fizzell, P.C., and some of whom were with the firm of local counsel, Whitfield & Eddy, P.L.C. The supporting affidavits state that principal counsel from Stinson, Mag & Fizzell generally limits his practice to representing debtors and creditors, and that counsel has handled numerous cases for creditors in the collection of obligations owed by debtors, such as this case. The hourly billing rates for the persons identified in the fee claim range from a low of $60 per hour for paralegals to a high of $185 per hour for one attorney.[2] Although the attorney with the highest hourly billing rate billed only 0.25 of an hour on the case, the attorney with the second highest hourly billing rate, $178.24, billed the highest number of hours, 264.75, for a total fee of $47,189.04. The second highest number of hours, 199, was billed at the more modest rate of $92.02 per hour, for a total fee of $18,312. Principal local counsel billed 52 hours at a rate of $141.97 per hour for a total fee of $7,382.50.

Perhaps more informative as to the reasonableness of the fee claim is the categorical breakdown of how the 614.65 total hours

---

**2.** The hourly billing rates are asserted to be weighted average rates taking into account increases in individual attorney's billing rates during the litigation of this matter.

and $81,845.57 in total fees was incurred. The fee claim states the following categories, total hours, and category subtotal of fees: (1) state receivership proceedings, 42.05 total hours, and $5,852.62 total fees; (2) investigation, 4.75 total hours, and $728.40 total fees; (3) drafting of the complaint and amended complaint, 6.75 total hours, and $1,086.57 total fees; (4) answer to counterclaim, 9.00 total hours, and $1,527.98 total fees; (5) research regarding jury demand and drafting of motion to strike jury demand and accompanying briefs, 54.25 total hours, and $7,179.94 total fees; (6) discovery, 148.25 total hours, and $21,870.91 total fees; (7) motions to compel and for sanctions, 68.50 total hours, and $8,486.60 total fees; (8) preparation of scheduling order, 9.00 total hours, and $1,485.92 total fees; (9) sale of property, 4.00 total hours, and $712.96 total fees; (10) motion for summary judgment against both defendants and accompanying briefs, 207.25 total hours, and $25,405.28 total fees; (11) "digesting" depositions, which the court understands to mean reading the depositions to prepare motions and briefs, 8.50 total hours, and $782.17 total fees; (12) reviewing Mrs. Garst's motion to amend her answer, 1.25 total hours, and $222.80 total fees; (13) reviewing district court rulings, 2.25 total hours, and $293.27 total fees; (14) local counsel's contributions, 32.60 total hours (where not otherwise included), and $4,628.22 total fees; (15) "miscellaneous" time, 15.25 total hours, and $1,521.87 total fees.

The fee breakdown does not distinguish fees incurred prosecuting claims against or defending counterclaims by David Garst from fees incurred in prosecuting claims against Marilyn Garst except in the one instance, number (12) above, in which a separate category of fees for reviewing Mrs. Garst's motion to amend is set out. Counsel's brief and affidavit make no further distinction, nor do they assert that fees incurred in prosecuting claims against Mrs. Garst have not been included in the fee claim against David Garst.

CFA asserts, and has briefed, the reasonableness of its fee claim as to each category of fees. The state court receivership proceedings, the only matters not litigated in front of this court, were undertaken to liquidate the assets of DGR. According to CFA,

at the start of these proceedings, it was owed over one million dollars by the partnership. However, after all of the personal property assets were liquidated, CFA was still owed a deficiency in excess of $80,000. CFA contends that it intervened in the state court proceedings to protect its position as an unsecured creditor when David Garst sought an end to the receivership and return to him of any remaining assets of DGR. One result of these proceedings was that CFA was granted a court-imposed lien on the unencumbered DGR real estate returned to David Garst to secure any judgment CFA might obtain against Mr. Garst for the deficiency, interest, attorneys fees, and costs.

Garst's belated response to the motion was filed on May 3, 1996. In that response, Garst asserted that the loan documents, including the fee-shifting provision on which CFA relies, are ambiguous as to what law applies, because they state that the note "shall be governed by and construed and enforced in accordance with the laws of the State of State." However, in ruling on the summary judgment motion, this court pointed out this ambiguity, but found that "the parties concede [the provision] means Missouri, the place of business of CFA." Order of February 21, 1996, p. 15. Garst has never properly challenged that finding, and offers no new evidence here contrary to it. Nonetheless, both parties have addressed the fee claim issues in light of both Missouri and Iowa law.

Turning to Garst's arguments, Garst asserts that CFA has failed to comply with the requirements of Iowa Code §§ 625.24 and 625.25 to obtain a fee award. Garst also contends that CFA has mischaracterized the record regarding the state court receivership proceedings and incurred expenses in those proceedings which were not necessary "had CFA merely understood what Garst was seeking before appearing at the hearing." Garst therefore contends that $5,852.62 in fees should be stricken from the award. Garst also contends that CFA has mischaracterized the difficulties in the discovery proceedings, and therefore its claim for fees for this category is excessive. Garst also seizes upon CFA's statement in its brief that "the

legal fees [CFA] incurred in its case-in-chief were minimal," as indicating that CFA's fee claim is excessive and includes claims for fees not within the ambit of the fee-shifting provision of the loan documents, because the agreement only provides for "all costs of collection and attorney fees incurred or paid by Lender enforcing this Note on default."

On May 13, 1996, CFA filed a supplemental affidavit of local counsel concerning attorneys fees, stating that counsel had no agreement, nor had there ever been any agreement, for him to share attorney fees taxed in this case with any other person and pointing out that the note in question, by its terms, required payment at a particular place. Principal counsel for CFA filed a similar supplemental affidavit on May 14, 1996, along with a reply brief reasserting the reasonableness of its fee claim as to each of the areas in which Garst offered a challenge.

On May 15, 1996, the court concluded from its review of the submissions of the parties that a hearing on the application for attorneys fees and expenses should be held. A telephonic hearing was therefore scheduled for May 30, 1996. At the hearing, CFA was represented by counsel Mark A. Shaiken of Stinson, Mag & Fizzell, P.C., in Kansas City, Missouri, and by local counsel Rodney P. Kubat of Whitfield & Eddy, P.L.C., in Des Moines, Iowa. David Garst was represented by counsel Peter Riley of the Tom Riley Law Firm, P.C., in Cedar Rapids, Iowa.[3]

The themes asserted by the two parties in the hearing were, not surprisingly, diametrically opposed. Counsel for CFA repeatedly urged the court to consider the reasonableness of the fees in light of Garst's counterclaim on which Garst had put a value of $5.5 million. CFA also contended that much of the expense of prosecuting this lawsuit resulted not only from issues injected by Garst, but by Garst's litigation strategy, which CFA characterized as providing nothing in discovery, conceding nothing, and resisting everything. CFA's counsel also contended that he could not properly and zealously have represented the interests of his client by assuming that Garst's claims were meritless and offering no adequate resistance to them. Counsel for Garst, however, asserted that this case had been "overdone" from the start, even before any difficulties developed in discovery or Garst's counterclaim was filed. Counsel for Garst likened CFA's approach to the litigation as using heavy artillery to assert a claim for very little.

This matter is now fully submitted, and it remains for the court to determine the reasonableness of the fees claimed in the circumstances.

## II. LEGAL ANALYSIS

### A. Applicable Federal And Local Rules

Both federal and local rules of civil procedure are applicable to the present claim for attorneys fees and costs. First, *Fed.R.Civ.P.* 54 provides in pertinent part as follows:

**(d) Costs; Attorneys' Fees.**

\* \* \*

**(2) Attorneys' Fees.**

**(A)** Claims for attorneys' fees and related non-taxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.

**(B)** Unless otherwise provided by statute or order of the court, the motion must be filed and served no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought. If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made.

**(C)** On request of a party or class member, the court shall afford an opportunity for adversary submissions with respect to the motion in accordance with Rule 43(e) or Rule 78. The court may determine issues of liability for fees before receiving submissions bearing on

---

**3.** Counsel for Marilyn Garst, Allison M. Heffern of White & Johnson, P.C., in Cedar Rapids, Iowa, was also present telephonically for part of the hearing, but was excused as no fee claim is made at this time against Marilyn Garst.

issues of evaluation of services for which liability is imposed by the court. The court shall find the facts and state its conclusions of law as provided in Rule 52(a), and a judgment shall be set forth in a separate document as provided in Rule 58.

**(D)** By local rule the court may establish special procedures by which issues relating to such fees may be resolved without extensive evidentiary hearings. In addition, the court may refer issues relating to the value of services to a special master under Rule 53 without regard to the provisions of subdivision (b) thereof and may refer a motion for attorneys' fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.

*Fed.R.Civ.P.* 54(d). Pursuant to the authority granted in *Fed.R.Civ.P.* 54(d), the Northern District of Iowa has promulgated N.D.Ia. LR 22, which provides in pertinent part as follows:

**RULE 22. CLAIMS FOR ATTORNEY'S FEES**

**a. Time and Content.** All post-judgment motions for an award of attorney fees shall be filed within the time required by Fed.R.Civ.P. 54(d)(2)(B). The claimed amount shall be supported by adequate itemization, including the amount of time claimed for any specific task as well as the hourly rate claimed. Expenses shall be separately itemized. The itemization shall also include a separate summary indicating how much total time was expended on each major category of work performed such as drafting pleadings, motions and briefs; legal research; investigation; interviewing; trial preparation and trial.

N.D.Ia. LR 22(a). The court finds that CFA has complied with the procedural requirements of these rules, including itemizations of expenses, and the court therefore turns to consideration of the content of the fees and expenses claimed.

### B. Fee-Shifting

#### 1. The "American Rule" and the contract clause exception

█ It has been well-settled for some time that the "American rule" on the payment of attorneys fees in federal litigation is that, "in the absence of a statute or an enforceable contract, each party is responsible for his or her own fees." *Actors' Equity Ass'n v. American Dinner Theatre Inst.,* 802 F.2d 1038, 1041 (8th Cir.1986) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975), and noting exceptions to the rule, none of which is applicable here); *see also C.R. Anthony Co. v. Wal–Mart Properties, Inc.,* 54 F.3d 514, 521 (8th Cir.1995) (rejecting argument that Arkansas law provides no authority for fee-shifting except by statute, and finding that the Arkansas Supreme Court had recognized an agreement for the payment of attorneys fees as enforceable in accordance with its terms); *Overholt Crop Ins. Serv. Co. v. Travis,* 941 F.2d 1361, 1370–71 (8th Cir.1991) (rejecting argument under South Dakota law that recovery of attorneys fees required specific statutory authorization in light of South Dakota Supreme Court decision recognizing that parties may generally contract for payment of attorneys fees); *Architectural Resources, Inc. v. Rakey,* 912 S.W.2d 676, 678 (Mo.Ct.App.1995) ("Missouri courts have historically adhered to the 'American rule' that with certain exceptions, litigants bear the expense of their own attorney fees.... [One] of the more common exceptions to this rule [is] recovery of fees pursuant to contract...."); *Schnucks Carrollton Corp. v. Bridgeton Health and Fitness, Inc.,* 884 S.W.2d 733, 739 (Mo.Ct.App. 1994) (same); *Brown v. Mercantile Bank of Poplar Bluff,* 820 S.W.2d 327, 340 (Mo.Ct. App.1991) (same); *State v. State Police Officers Council,* 525 N.W.2d 834, 837 (Iowa 1994) ("Each party is generally responsible for its own attorney fees in the absence of a statute or enforceable contractual provision allowing for fee-shifting," and citing some exceptions to this rule not applicable here); *Chapman's Golf Ctr. v. Chapman,* 524 N.W.2d 422, 427 (Iowa 1994) (enforcing contractual fee-shifting provision); *Lara v. Thomas,* 512 N.W.2d 777, 786 (Iowa 1994) (same); *Suss v. Schammel,* 375 N.W.2d 252, 256 (Iowa 1985) (same). CFA founds its request for attorneys fees on such a fee-shifting provision in the 1993 Revolver Note.

### 2. Appellate review of fee awards

 The Eighth Circuit Court of Appeals has stated the standard of review for an award of attorneys fees as follows:

Factual determinations concerning an award of attorney's fees are reviewed under a clearly erroneous standard, while the district court's determination of the amount of the fee award is reviewed for abuse of discretion. Interpretation of an unambiguous fee-shifting clause, however, is one of law to be reviewed de novo by this court.

*Litton Microwave Cooking Prods. v. Leviton Mfg. Co., Inc.,* 15 F.3d 790, 795–96 (8th Cir. 1994) (also describing the review given determinations of the amount of fee awards and findings of underlying facts as "more deferential" than the review given construction of the fee-shifting clause); *Walitalo v. Iacocca,* 968 F.2d 741, 747 (8th Cir.1992) ("This court generally will not overturn a district court's fee award absent an abuse of discretion. If the district court has used improper standards or procedures in determining fees, however, we will reverse."). A hearing on the reasonableness of attorneys fees is not necessary, but is proper if contested issues of fact arise. *Walitalo,* 968 F.2d at 750.

### 3. "Reasonableness"

 Even when fee awards are authorized by statute or contract, the touchstone of what fees the court will actually award is *reasonableness,* whatever fees are claimed. For example, in *Tanenbaum v. Agri–Capital, Inc.,* 885 F.2d 464 (8th Cir.1989), the Eighth Circuit Court of Appeals found that Texas law provides that recoverable attorneys fees include those incurred in defending claims that the contract giving rise to the attorneys fees was invalid, but that, even so, "attorney's fees must be reasonable under the facts of the case and must also bear some reasonable relationship to the amount in controversy." *Tanenbaum,* 885 F.2d at 471; *see also Aetna Life Ins. Co. v. Anderson,* 848 F.2d 104, 108 (8th Cir.1988) (citing Iowa Code § 625.22, which allows only *reasonable* fees when a contractual provision authorizes the award of fees); Iowa Code § 625.22 ("When judgment is recovered upon a written contract containing an agreement to pay an attorney's fee, the court shall allow and tax as a part of the costs a *reasonable* attorney's fee *to be determined by the court*"; emphasis added).

The Eighth Circuit Court of Appeals has upheld significant reductions in the amount of fees actually granted as compared to fees requested as no abuse of discretion where the district court itemized the respects in which it found the claiming party had spent "an unreasonable and unjustifiable amount of time and money." *Litton Microwave Cooking Prods.,* 15 F.3d at 796–97 (upholding reduction of claim for $999,690.82 in fees by $289,436.50 to an award of $710,254.32). Similarly, in *Tanenbaum,* the Eighth Circuit Court of Appeals upheld the district court's reduction of a fee claim for enforcement of a claim on a promissory note from $26,287.50 to $8,500.00. *Tanenbaum,* 885 F.2d at 471. The district court had made this reduction after finding " 'that the expenditure of over 210 hours of work is excessive for the collection of a $75,000.00 note.' " *Id.*

 This is not the first case in which this judge has considered the reasonableness of fee claims. *See Brown v. State of Iowa,* 152 F.R.D. 168 (S.D.Iowa 1993) (imposing fees as a discovery sanction, but finding the fees claim unreasonable). In *Brown,* I observed that in other contexts, such as fee-shifting under various civil rights statutes, courts have consistently held that "an intolerably inflated fee request justifies a complete denial of fees." *Brown,* 152 F.R.D. at 175 (citing *Lewis v. Kendrick,* 944 F.2d 949, 958 (1st Cir.1991)). I then quoted with approval the following from the *Kendrick* decision:

[A]ppellant's counsel submitted a claim which was so intolerably inflated that the District Court was warranted in departing from the usual practice and reacting vigorously to prevent such abuse of the court's authority to award reasonable compensation to counsel.

\* \* \* \* \* \*

If, as appellant argues, the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable conse-

quence of such misconduct would be reduction of their fee to what they should have asked for in the first place.

*Brown,* 152 F.R.D. at 175 (quoting *Kendrick,* 944 F.2d at 958, in turn quoting *Brown v. Stackler,* 612 F.2d 1057, 1059 (7th Cir.1980), and citing cases in accord). In *Brown,* I also stressed "that a request for attorney fees under Federal Rule of Civil Procedure 37(a)(4) should be made in good faith and not as an opening gambit in negotiations. Moreover, '[t]he lawyer must not abandon self-restraint or careful billing judgment because of the expectation that the obligation to pay the fee will be statutorily shifted to the losing party.' " *Brown,* 152 F.R.D. at 175 (quoting *Hall v. Borough of Roselle,* 747 F.2d 838, 841 (3d Cir.1984)). The court finds these principles of self-restraint even more appropriate in the context of a contractual fee-shifting provision, which does not have the same justification of statutory fee-shifting provisions, which are designed "to 'ensure effective access to the judicial process ... not to serve as a full employment or continuing education program[ ] for lawyers and paralegals.' " *Brown,* 152 F.R.D. at 175 (quoting *Lipsett v. Blanco,* 975 F.2d 934, 938 (1st Cir.1992) (citations omitted)). Contractual fee-shifting provisions ensure only that losers pay. They should not be used to justify gouging losers with the excuse that the losers agreed to them.

### 4. Fee provisions and fees claimed here
#### a. Applicable law

■ Construction of the fee-shifting clause requires reference to the governing state's law. *Litton Microwave Cooking Prods.,* 15 F.3d at 796 (referring to Minnesota law to construe a contract governed by Minnesota law). Although Garst has belatedly asserted the ambiguity of the 1993 Revolver Note as to what state's law applies, and bases some of his defenses to the fees claimed here on Iowa statutory provisions, this court found in its summary judgment ruling that the parties had conceded that Missouri law applies to the 1993 Revolver Note. Garst has never properly challenged that finding and offers no evidence to support the conclusion that Iowa law applies. Therefore, the court concludes that the fee-shifting provisions of the 1993 Revolver Note are governed by Missouri law.[4]

#### b. Construction of the fee-shifting provision

■ Furthermore, the court finds no ambiguity in the fee-shifting provision itself. The provision provides, "Borrower will pay on demand, to the extent permitted by applicable law, *all* costs of collection and attorney fees incurred or paid by Lender *enforcing this Note on default.*" 1993 Revolver Note, p. 3 (emphasis added). Thus, there are no restrictions or limitations on the proceedings for which fees may be claimed, no restriction

---

4. Although the court concludes that the fee-shifting provision at issue here is governed by Missouri law, thus obviating the need to address Garst's defenses based on alleged non-compliance with Iowa Code provisions, the court finds that if Iowa law applied, it would not undermine CFA's right to recover attorneys fees. Garst asserted non-compliance with Iowa Code § 625.24, which provides that no fees shall be taxed "unless it appears by affidavit of the attorney that there is not and has not been an agreement between the attorney and the attorney's client or any other person, express or implied, for any division or sharing of the fee to be taxed.... The affidavit shall be filed prior to any attorney's fees being taxed." However, in this case, as supplements to their original fee claims, both CFA's principal counsel and its local counsel have appended supplemental affidavits making the required statements. As to Garst's defense to the payment of attorneys fees based on Iowa Code § 625.25, on the ground that he was not given a reasonable opportunity to pay the debt before the action was brought, the court finds that this case falls within the specific exception to this requirement found in the statute itself. Iowa Code § 625.25 provides that it "shall not apply to contracts made payable by their terms at a particular place, the maker of which has not tendered the sum due at the place named in the contract." In this case, the sum due under the 1993 Revolver Note was payable, by the terms of the note, at a particular place, because the note provided as follows:

All payments of principal and interest shall be made in lawful currency of the United States of America at the following address:
Farmland Financial Services Company
P.O. Box 27-328
Kansas City, Missouri 64180
Attention:
or at such other place as the holder thereof may from time to time, designate in writing.
1993 Revolver Note, p. 3. Thus, Garst's defenses to payment of attorneys fees specifically founded on Iowa law must fail.

of fees to those incurred in the district court, and no restriction on fees incurred in defense of counterclaims or defenses rather than in prosecution of the lender's own claim. Rather, reference to "all" costs of collection and fees incurred or paid in "enforcing this Note on default" is as inclusive as this court can well imagine.

### c. Evaluation of the fee claim under applicable law

 Under Missouri law, "[w]here a contract provides for the payment of attorney fees and expenses incurred in the enforcement of a contract provision, it is error to fail to make such an award to the prevailing party." *Architectural Resources, Inc.,* 912 S.W.2d at 678; *Schnucks,* 884 S.W.2d at 739; *Jackes–Evans Mfg. Co. v. Christen,* 848 S.W.2d 553, 557 (Mo.Ct.App.1993). Nonetheless, there are some limits under Missouri law as to the extent of the fees recoverable. Under Missouri law, the question of attorneys fees is still consigned to the court's expertise and determination of reasonableness:

> Trial courts are considered to be experts on the question of attorney fees, *Roberts v. McNary,* 636 S.W.2d 332, 338 (Mo. banc 1982), and do not require any evidence or other opinion as to their value. *Schnucks,* 884 S.W.2d 733, 740 (citing *Nelson v. Hotchkiss,* 601 S.W.2d 14, 21 (Mo. banc 1980)).

> As more fully explained in *Roberts:*

> "The setting of attorneys' fees is within the sound discretion of the trial court and should not be reversed unless the award is arbitrarily arrived at or is so unreasonable as to indicate indifference and lack of proper judicial consideration.... In the absence of evidence to the contrary, it is presumed that the allowance of attorneys' fees was for compensable services and that no allowance was made for noncompensable services.... Thus, the burden was on appellants to affirmatively establish that the compensation allowed was a clear or manifest abuse of sound judicial discretion.... Moreover, in the absence of

contrary evidence, the trial court is presumed to know the character of the services rendered in duration, zeal and ability, and to know the value of them according to custom, place and circumstances...."

*Id.* at 338 (citations omitted).

*Architectural Resources, Inc.,* 912 S.W.2d at 681; *see also Schnucks,* 884 S.W.2d at 740 (where contract provided for fee-shifting, prevailing party was "entitled to *reasonable* attorney's fees" (emphasis added), and the "trial court is an expert on attorney's fees and does not require any evidence or other opinion as to their value."). Even where a contract does not expressly limit the prevailing party's fee claim to "fees reasonably incurred, '[a]n attorney is only entitled to fees which are fair and just and which adequately compensate him for his services.'" *Missouri ex rel. Chase Resorts, Inc. v. Campbell,* 913 S.W.2d 832, 835 (Mo.Ct.App.1995) (quoting *Terminal R.R. Ass'n of St. Louis v. Schmidt,* 353 Mo. 79, 182 S.W.2d 79, 82 (1944)). Thus, "[o]nce liability on a contract has been determined, damages in the form of attorney's fees permitted under the contract follow as a matter of law, and the trial court may calculate these amounts and enter judgment accordingly." *Id.* (further recognizing that the court is an expert on attorney's fees and may award reasonable amounts as a matter of law). Finally, under Missouri law, in cases in which attorneys fees may be recovered, reasonable paralegal fees are also allowable. *Newport v. Newport,* 759 S.W.2d 630, 637 (Mo.Ct.App.1988).

 Although any fees awarded pursuant to a fee-shifting provision in a contract must be reasonable, it is clear from governing law that fees may be claimed for all stages of the judicial proceedings necessary to obtain enforcement of an agreement. *See, e.g., Fortune Southfield Co. v. Kroger Co.,* 931 F.2d 1282, 1284–85 (8th Cir.1991) (applying Missouri law to fee-shifting provision in contract, and finding proper recovery extended to reasonable attorneys fees incurred in defense of third-party claim and in prosecution of counterclaim, together with other reasonable costs and expenses of the litigation).[5]

---

5. Even if Iowa law, rather than Missouri law, applied, the result would be no different. *See, e.g., Federal Land Bank of Omaha v. Woods,* 480

N.W.2d 61, 70 (Iowa 1992) (under note with fee-shifting provision, party enforcing the note was

In this case, the court specifically finds that defense to Garst's counterclaims was necessary to recover on the 1993 Revolver Note. In its summary judgment ruling, the court recognized that Garst's counterclaims were also raised as grounds for denying CFA the judgment it sought on the note. *See, e.g.,* Order of February 21, 1996, 917 F.Supp. 1356, 1365.

Furthermore, Garst's assertion that CFA has conceded that only a small part of the fees claimed were incurred in seeking to collect on the note is meritless. CFA conceded no such thing. What CFA actually stated was that "the legal fees [CFA] incurred in its case-in-chief were minimal. The legal fees it incurred in defending against the counterclaims, however, were significant, but completely appropriate and reasonable in light of the magnitude of the claims asserted by Mr. Garst, and his conduct in the discovery dispute." As the court has stated, defense of the counterclaims was a necessary part of obtaining a recovery on the 1993 Revolver Note. Therefore, the fees claimed for defending the counterclaim are, as a general matter, appropriate for recovery under the terms of the fee-shifting provision of the note.

The court is equally unimpressed by Garst's assertion that CFA's intervention in the state receivership proceedings was unnecessary. The court cannot hold that CFA should simply have relied on Garst to protect its interests in the receivership proceedings, which apparently is what Garst expected CFA to do when he argues that CFA would not have had to intervene had CFA recognized what Garst was asking the state court to do. Furthermore, in light of the dismissal of Garst's counterclaims and defenses for failure to make discovery or respond to court orders, the court doubts that Garst can argue in good faith that CFA has mischaracterized the difficulties encountered during discovery in this matter.

■ Nonetheless, the court has no intention of granting the attorneys fees in the full amount requested, because, in the first instance, the court finds that there has been no proration of the total fees to reflect expenses incurred in recovering from *this defendant.* Instead, CFA claims fees for the entirety of the litigation, even though it has not yet prevailed against Marilyn Garst. The court found that genuine issues of material fact precluded summary judgment in CFA's favor against Marilyn Garst, and CFA's claims against Marilyn Garst must therefore proceed to a trial on the merits before any recovery may be had against her. Because prosecution of Marilyn Garst was not a necessary step to obtaining a recovery from David Garst, it is neither fair nor just to impose upon David Garst the expenses CFA incurred in litigating against Marilyn Garst. *Campbell,* 913 S.W.2d at 835 (court may impose only such fees as are fair and just pursuant to a fee-shifting provision in a contract). Thus, the court specifically strikes from the fee claim item (12) above, for reviewing Mrs. Garst's motion to amend her answer, in the amount of 1.25 total hours, and $222.80 total fees. Striking this portion of the fee claim reduces the fee award from the $81,845.00 requested to $81,622.20. Furthermore, the court concludes that a reasonable estimate, based on its expertise and the nature of the issues involved, *Campbell,* 913 S.W.2d at 835; *Architectural Resources, Inc.,* 912 S.W.2d at 681; *Schnucks,* 884 S.W.2d at 740, is that approximately ten percent of CFA's counsels' total time was expended in prosecuting CFA's claims against Marilyn Garst. Consequently, the court will strike ten percent of the total fee claim and ten percent of the total expenses claimed.[6] This determination reduces the fee award by $8,162.22 from $81,622.20 to $73,459.98 and expenses from $10,700.20 to $9,630.18.[7]

entitled to attorneys fees for "legal services in establishing its own claim and in defending against the counterclaims and affirmative defenses" of the borrower, plus appellate attorneys fees "because the attorney fee language in the note does not prohibit such fees.").

6. The court does not deem it necessary to determine what hours at what rates constitute the ten percent of time struck from the fee claim as pertaining solely to prosecution of claims against

Marilyn Garst. Rather, the court assumes that the ten percent of excess time was expended by all attorneys and paralegals; hence, ten percent of the total *fee* may be stricken.

7. This reduction should not suggest that CFA does not owe its counsel the fees attributable to prosecuting the action against Marilyn Garst or that these fees have not been reasonably incurred. Rather, the court finds only that these fees cannot be awarded against David Garst.

Furthermore, the court will not award the full amount of the remaining attorneys fees requested, as representing the fees and expenses for prosecuting claims against David Garst or defending against his counterclaims, because the court finds the remaining fees reflect "an unreasonable and unjustifiable amount of time and money," *Litton Microwave Cooking Prods.*, 15 F.3d at 796–97; *accord Campbell*, 913 S.W.2d at 835 (" '[a]n attorney is only entitled to fees which are fair and just and which adequately compensate him for his services.' "); *Architectural Resources, Inc.*, 912 S.W.2d at 681 (court may only award reasonable attorneys fees); *Schnucks*, 884 S.W.2d at 740 (only "reasonable" fees are allowable under a fee-shifting provision of a contract), at least in the context of shifting those fees to the losing party. This is not to say that the court has any doubt that counsel for CFA actually performed the amount of work indicated in the fee claim or to indicate that the court is critical of counsel's decisions in how to prosecute this lawsuit. Nor is the court critical of counsel for attempting to address each of Garst's counterclaims, however frivolous they may ultimately have turned out to be. CFA urges the court to consider the entire fee claim in light of Garst's counterclaim, which he alleged had a value of $5.5 million, not in light of the outstanding balance due on the 1993 Revolver Note, and to consider the extent to which Garst caused the difficulties in efficiently and economically resolving this lawsuit. The court is sensitive to the fact that Garst undoubtedly exacerbated the problems, and therefore the costs, of prosecuting this litigation. However, Garst's estimate of the value of his counterclaim may properly be dramatically discounted, as Garst never produced any adequate support, or, so far as the court knows, any reasoned basis for such a value for his counterclaims. Garst simply "asked for the moon," and the court finds there was no basis for CFA to have evaluated Garst's claim as approaching in value anything like millions of dollars. Even assuming there might have been some legal foundation for Garst's claims, the court is not convinced that the issues were so complex as to require the astounding number of hours devoted to defending those claims.

Counsel for CFA gave a very able argument for the amount of time expended in light of the circumstances largely created by Garst's "shotgun" approach to his counterclaims and Garst's non-cooperation in this litigation. However, the fact that CFA desired and counsel provided a "Rolls Royce" defense to the counterclaims does not justify, in this court's opinion, transferring the entire cost of such a defense onto Garst. *Campbell*, 913 S.W.2d at 835 (fee award must be fair and just). Such a transfer is not justified even in view of Garst's injection of the issues into the litigation in light of the size of CFA's ultimate recovery and the dollar amount reasonably at issue in the case, as opposed to whatever Garst may have claimed. As the court observed above, a lawyer must not abandon self-restraint or careful billing judgment because of the expectation that the obligation to pay the fee will be contractually shifted to the losing party. *See Brown*, 152 F.R.D. at 175 (offering the same observation in the context of a statutory fee-shifting provision, citing *Hall*, 747 F.2d at 841). Neither may the attorney or the client assume that a fee-shifting provision in a contract entitles the client to a "Rolls Royce" prosecution or defense. While the client may opt for such a trial strategy, it is simply unfair to require the losing party to pick up the entire tab. From the client's perspective, the expenditure of time and money in this case may indeed appear reasonable, and the client in this case should have no complaint about paying for what it requested and, in this court's view, what it has received. However, the court's perspective in awarding fees, even pursuant to a fee-shifting provision in a contract, is not that of the client who obtained a favorable result. The court's view must be objective and must take into consideration what best serves the goal of the just and inexpensive disposition of claims. *See, e.g., Fed.R.Civ.P.* 1 ("These rules ... shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.").

One specific example, but by no means the only one, of billing in excess of what may fairly be shifted to the losing party in this case is the claim for 54.25 hours and $7,179.94 for researching, drafting, and brief-

ing CFA's motion to strike Garst's jury demand. Although the court found the initial submissions of CFA inadequate, recognized essential issues not touched on by the parties, and required further briefing, the court knows well that the issues could properly have been presented to the court in the first place expending considerably less than 54.25 hours of counsels' time. Although the claim for this item has already been reduced by ten percent in the across-the-board cut representing fees pertaining to prosecution of Marilyn Garst, the court will cut in half the remaining fees of $6,461.95 claimed for this item. The fee claim is therefore reduced for excessiveness by a further $3,230.97 to an award of $70,229.01.

An even clearer example of the "Rolls Royce" approach here is the claim for 207.25 hours and $25,405.28 in fees for prosecution of CFA's motion for summary judgment. The court cannot conceive that a "Chevrolet" approach to prosecution of the summary judgment would have involved more than thirty to forty hours. The court is aware that many cases can be prosecuted through trial and an appeal in less than 200 hours of attorney time. Even addressing all of the issues presented before David Garst's counterclaim was stricken as a discovery sanction, the claim for time on the summary judgment is excessive. However, in order to ensure that CFA's attorneys are adequately compensated for their services, *Campbell*, 913 S.W.2d at 835, the court will only reduce the fees claimed for the summary judgment by half. These fees have already been reduced by ten percent in the across-the-board cut of fees pertaining to Marilyn Garst from $25,405.28 to $22,864.75. Thus, the fees awarded will be reduced from $70,229.01 by a further $11,432.38 to $58,796.63.

Although the court agrees that the conduct of David Garst undoubtedly exacerbated the difficulty and expense of this litigation, and recognizes that David Garst's counterclaims were ultimately stricken as a sanction for failure to cooperate in discovery or to follow court orders, the court still cannot countenance awarding the full 148.25 total hours and $21,870.91 total fees for discovery and the 68.50 total hours and $8,486.60 total fees for motions to compel and for sanctions. The parties agreed that only four depositions were taken over three days in the course of discovery, although certain other "statements" were taken under oath. CFA asserts that much of the expense of discovery was incurred finding alternate sources for information that Garst did not timely provide in response to discovery requests. Although this may be true to some extent, the court has not found the products of discovery or the work product generated in preparing motions to compel and for sanctions reasonably reflects the amount of hours and fees claimed. The fees for these two categories have already been reduced by ten percent from $30,357.51 to $27,321.76 to exclude fees incurred in prosecuting Marilyn Garst. The court will also reduce the fees awarded for these categories by half, thus reducing the fees awarded by a further $13,660.88 to $45,-135.75.

The court believes it is reasonable to assume that all other claims of time and fees are excessive to a degree similar to that found in these specific examples. However, in order to ensure that CFA's attorneys are adequately compensated for their services, *Campbell*, 913 S.W.2d at 835, the court will make only a twenty percent across-the-board reduction for excessiveness in the remaining fees claimed in areas not already specifically cut except by the ten percent reduction to exclude fees pertaining to Marilyn Garst.[8]

8. The remaining categories of fees, as reduced by ten percent, and now reduced by twenty percent, are as follows: (1) state receivership proceedings, $5,267.36 (90% of $5,852.62 total fees claimed) is reduced by $1,053.47 to $4,213.89; (2) investigation, $655.56 (90% of $728.40 total fees claimed) is reduced by $131.11 to $524.45; (3) drafting of the complaint and amended complaint, $977.91 (90% of $1,086.57 total fees claimed) is reduced by $195.58 to $782.33; (4) answer to counterclaim, $1,375.18 (90% of $1,527.98 total fees claimed) is reduced by $275.04 to $1,100.14; (5) preparation of scheduling order, $1,337.33 (90% of $1,485.92 total fees claimed) is reduced by $267.47 to $1,069.86; (6) sale of property, $641.66 (90% of $712.96 total fees claimed) is reduced by $128.33 to $513.33; (7) "digesting" depositions, $703.95 (90% of $782.17 total fees claimed) is reduced by $140.79 to $563.16; (8) reviewing district court rulings, $263.94 (90% of $293.27 total fees claimed) is reduced by $52.79 to $211.15; (9) "miscellaneous" time, $1,369.68 (90% of $1,521.87 total fees claimed) is reduced by $273.94 to $1,095.74. The court will not, however, make any reduction for the claim for local counsel's contributions beyond the ten percent reduction imposed for

Therefore, the fees are reduced by a further $2,518.52 to $42,617.23. However, because the itemization of expenses does not reflect the same kind of inflation, the court will leave intact the remaining ninety percent of CFA's expenses claim. Thus, the expenses to be awarded remain at $9,630.18.

 As a final observation, the court also finds that a fee claim of over $80,000 to collect the outstanding principal due on a promissory note of approximately $80,000 does not reflect an appropriate proportionality. *Tanenbaum*, 885 F.2d at 471 (the district court properly reduced a fee claim from $26,287.50 to $8,500.00, because it found " 'that the expenditure of over 210 hours of work is excessive for the collection of a $75,000.00 note.' "). Although attorneys fees of roughly ten percent of the total value of a note for $865,000 would not seem excessive, CFA only had to take recourse to legal action to recover approximately ten percent of the total note. Even with the adjustments to the fee claim the court has made here, the total fee award will still amount to approximately fifty percent of CFA's recovery of the principal due on the note, exclusive of interest. Such an award is by no means stingy.

### III. CONCLUSION

In light of this court's conclusion that the fee and expenses claim presented by CFA includes claims for fees incurred in the prosecution of claims against Marilyn Garst that are not compensable by David Garst, and in light of this court's conclusion that the remaining fees claimed are excessive, applying a test of what it is objectively reasonable to shift to the losing party, CFA's application for attorneys fees and expenses is **granted in part and denied in part**. CFA is awarded $42,617.23 in attorneys fees and $9,630.18 in expenses.

**IT IS SO ORDERED.**

fees pertaining to Marilyn Garst. The amount of time and fees sought for local counsel is reasonable in light of the duties of local counsel and the nature of this litigation and is unaffected by excesses in other categories. Thus, the total reduction of these categories of fees is $2,518.52.